EDWARD LEE BARHAM, Plaintiff v. KELLI MOORE BARHAM, Defendant

No. COA96-742

(Filed 5 August 1997)

1. **Divorce and Separation § 392.1 (NCI4th)— child support guidelines—supporting spouse's income—funds encumbered by bank**

   The trial court erred when calculating child support under the North Carolina Child Support Guidelines by failing to consider all of plaintiff's gross income in 1993 and 1994 rather than the net amount retained after a creditor bank encumbered a portion of plaintiff's corporation's cash reserves. Neither party challenged the finding that the Guidelines apply; under the Guidelines, the definition of gross income in the self-employment/business income context is gross receipts minus ordinary and necessary expenses required for self-employment or business operation. The encumbered cash reserve constitutes value retained by plaintiff; it is not like expenses for repairs, property management and leasing fees, real estate taxes, insurance and mortgage interest, all of which are spent money never to be regained by the spender. Although technically encumbered, the cash reserves are available to plaintiff under the Guidelines because it was his choice to pledge them to the bank in exchange for business financing.

2. **Divorce and Separation § 275 (NCI4th)— alimony—gross income—amount pledged to bank as business reserve—excluded**

   The trial court erred in calculating plaintiff's gross income when reducing his alimony payments under N.C.G.S. §§ 50-16.5

and 50-16.9 as they existed prior to 1 October 1995 by not including the portion of plaintiff's gross income pledged to a bank in a reserve. The critical issue in determining a supporting spouse's gross income is the supporting spouse's actual ability to make alimony payments. By deducting the cash reserves pledged to the bank by plaintiff's corporation from his annual gross income, the trial court in effect placed the burden of this voluntarily assumed business investment on defendant, the dependent spouse. Just as a supporting spouse is not required to pay for the maintenance and support of a dependent spouse's business ventures, a dependent spouse also should not be made to bear the financial burden of a supporting spouse's investment. Although plaintiff contends that any error in the calculation was not prejudicial because the court based its calculation of alimony solely on a change in defendant's needs and not on plaintiff's ability to pay, the court's findings and conclusions do not indicate whether the increase in defendant's income was the dispositive factor; in addition, no single factor under N.C.G.S. § 50-16.5(a) should be viewed in isolation in calculation of the proper amount of alimony.

**3. Divorce and Alimony § 280 (NCI4th)— alimony—standard of living—modified to post-divorce level**

The trial court erred when determining a change in alimony by modifying defendant's accustomed standard of living from that determined in the prior, 1990 order based on findings that defendant had not returned to the standard of living she enjoyed during the marriage and that plaintiff had only begun to approximate his previous standard of living after he remarried. Alimony is designed to enable the dependent spouse to achieve the standard of living she or he enjoyed during the marriage; here, the trial court unequivocally disregarded this principle and instead based alimony on the standard of living the parties maintained after the divorce.

**4. Divorce and Alimony § 538 (NCI4th)— modification of alimony reversed—attorney fees denied—not reviewed— entitlement to relief sought**

The issue of whether the court erred by denying defendant attorney fees was not addressed where modification of her alimony was reversed. Entitlement to the relief sought is necessary for an award of attorney's fees.

BARHAM v. BARHAM

[127 N.C. App. 20 (1997)]

**5. Divorce and Separation § 427 (NCI4th)— child support— increase—effective date**

A trial court did not abuse its discretion by not increasing child support effective as of the date of the motion. Although the court has the discretion to modify a child support order as of the date of the petition to modify, it is not required to do so.

**6. Divorce and Alimony § 291 (NCI4th)— alimony—changed circumstances—consumer price index—no automatic update**

The trial court did not err by failing to apply the consumer price index to make cost of living adjustments when comparing defendant's reasonable alimony needs as determined in a 1990 order to her needs as of the effective date of this 1995 order. It has previously been observed that the general reliability of consumer price index statistics has not been established. The trial court made findings regarding defendant's reasonable expenses and needs as of the 1995 hearing. Defendant was required to carry her burden to show a change of circumstances and was not entitled to an automatic updating of her reasonable needs and expenses based on the consumer price index.

Judge WALKER concurring in part and dissenting in part.

Appeal by defendant and cross appeal by plaintiff from order entered 11 July 1995 and amended 28 September 1995 by Judge William C. Lawton in Wake County District Court. Heard in the Court of Appeals 19 March 1997.

*Gulley, Kuhn & Taylor, L.L.P., by Jack P. Gulley, for plaintiff.*

*Oliver & Oliver, PLLC, by John M. Oliver and Cindy G. Oliver, for defendant.*

McGEE, Judge.

Plaintiff and defendant were married in June 1968 and divorced in August 1988. Two children were born of the marriage. On 17 October 1990, the Wake County District Court ordered plaintiff to pay defendant permanent alimony of $686 per month and child support of $532 per month. In 1990, plaintiff owned one-half interest in Triangle Retirement Services, Inc. He drew $4000 monthly income solely from this corporation, and defendant had a gross annual income of $14,500.

In the 1990 order, the court found defendant's reasonable needs, to maintain her accustomed standard of living, were in excess of $2500 per month but that plaintiff was unable to pay enough alimony to enable her to achieve her accustomed standard of living.

In 1994, both plaintiff and defendant moved to modify the 1990 order and defendant moved for attorney's fees. The motions were heard during the 24 May 1995 Domestic Session of Wake County District Court, Judge William C. Lawton presiding. The trial court found, as of the hearing date, plaintiff's annual net income drawn from the corporation was $62,000 ($77,500 gross) based on an agreement with a creditor bank in which an encumbered portion of the corporation's cash reserves could not be paid out as salary. Defendant earned a gross income of $2860 per month at the time of the hearing. By order entered 11 July 1995, the trial court decreased plaintiff's alimony obligation to $532 per month and increased his child support obligation to $699 per month and denied defendant's request for attorney's fees. On 28 September 1995 the trial court entered an order amending the 11 July 1995 order. Defendant appeals and plaintiff cross appeals from the 11 July 1995 order, as amended.

## I. Defendant's Appeal

[1] Defendant first contends the trial court erroneously calculated child support and alimony by failing to consider all of plaintiff's gross annual income in 1993 and 1994. Specifically, she contends the court erred by computing plaintiff's gross annual income based on the amount actually retained by him from the corporation ($62,000 net/$77,500 gross) rather than on the gross annual income he reported on his 1993 federal income tax return and his estimated gross annual income for 1994.

### A. Gross Income Calculation for Child Support

N.C. Gen. Stat. § 50-13.4(c) provides, in pertinent part:

(c) Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

G.S. § 50-13.4(c) (1995).

The amount of a parent's child support obligation is determined by application of The North Carolina Child Support Guidelines (Guidelines). G.S. § 50-13.4(c); *Rose v. Rose*, 108 N.C. App. 90, 93, 422 S.E.2d 446, 447 (1992). A trial court may deviate from the Guidelines when it finds, by the greater weight of the evidence, application of the Guidelines: (1) would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support; or (2) would be otherwise unjust or inappropriate. G.S. § 50-13.4(c); *Guilford County ex rel. Easter v. Easter*, 344 N.C. 166, 169, 473 S.E.2d 6, 7-8 (1996). Here, the trial court found the Guidelines apply and neither party challenges that finding.

The Guidelines define "income" as "actual gross income of the parent, if employed to full capacity, or potential income if unemployed or underemployed." Guidelines, at 2 (1 October 1994). The Guidelines further describe "gross income" as follows, in pertinent part:

(1) Gross income: Gross income includes income from any source, except as excluded below, and includes but is not limited to income from salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workers compensation benefits, unemployment insurance benefits, disability pay and insurance benefits, gifts, prizes and alimony or maintenance received from persons other than the parties to the instant action. . . .

(2) Income from self-employment or operation of a business: For income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation, gross income is defined as *gross receipts minus ordinary and necessary expenses required for self-employment or business operation.* Specifically excluded from ordinary and necessary expenses for purpose of these Guidelines are amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses, investment tax credits, or any other business expenses determined by the Court to be inappropriate for determining gross income for purposes of calculating child support. In general, income and expenses from self-employment or operation of a business should be carefully reviewed to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. In most

cases, this amount will differ from a determination of business income for tax purposes.

Guidelines, at 2-3 (emphasis added).

In this case the trial court did not include in plaintiff's actual gross annual income an encumbered cash reserve owned by plaintiff's corporation. On this issue the court found:

27. While there is a sizeable cash reserve of Plaintiff's corporation (which would ordinarily be available to Plaintiff as an owner), this reserve is currently fully encumbered by a creditor bank of Plaintiff's corporation, and by contract cannot be used by Plaintiff or his current wife. It, therefore, is not considered by the Court as "income", though in the future, when the bank/creditor is out of the financial picture, this cash reserve fund of Plaintiff's closely held corporation may, indeed, be income. The current balance of this retained earnings account is now around $100,000.00.

Similarly, the trial court made the following conclusion of law:

7. . . . While cash reserves are generally liquid and available to owners (a portion of which is generally counted on, however, for use in capital improvements) where the cash reserve is required to be deposited in and is held by a creditor/bank, it is not considerable as "income" available in computing alimony and/or support.

We find the trial court's exclusion of plaintiff's corporation's encumbered cash reserve funds in its calculation of child support prejudicial error. The definition of gross income in the self-employment/business income context is "gross receipts minus ordinary and necessary expenses required for self-employment or business operation." Guidelines, at 3. The critical question, then, is whether the cash reserves pledged to the bank by plaintiff's corporation constitute an ordinary and necessary expense under this definition.

This Court addressed a similar question in *Lawrence v. Tise*, 107 N.C. App. 140, 419 S.E.2d 176 (1992). In *Lawrence*, this Court held "[m]ortgage principal payments . . . are not an 'ordinary and necessary expense' within the meaning of the Guidelines." *Id.* at 149, 419 S.E.2d at 182. The Court listed the following types of expenses as those which are properly deducted as ordinary and necessary: "expenses for repairs, property management and leasing fees, real estate taxes, insurance and mortgage interest." *Id.* The encumbered cash reserve

at issue here is more like the mortgage principal payments in *Lawrence* than the expenses held ordinary and necessary in *Lawrence*. Like the mortgage principal payments and unlike the other expenditures, the encumbered cash reserve constitutes value retained by plaintiff. It is not like expenses for repairs, property management and leasing fees, real estate taxes, insurance and mortgage interest all of which are spent money never to be regained by the spender. Although technically encumbered, the cash reserves are available to plaintiff under the Guidelines because it was his choice to pledge them to the bank in exchange for business financing. Since the court erred in calculating plaintiff's gross annual income under the Guidelines, we reverse this portion of the court's order and remand for a re-calculation of child support under the Guidelines.

## B. Gross Income Calculation for Alimony

[2] We also find prejudicial error in the trial court's calculation of gross annual income in regard to its decision to reduce plaintiff's alimony payments.

The two alimony statutes applicable here, N.C. Gen. Stat. §§ 50-16.5 and 50-16.9 were repealed and amended, respectively, on 1 October 1995. *See* 1995 Sess. Laws ch. 319, §§ 1, 7. These changes are applicable only to actions filed on or after 1 October 1995 and do not apply to pending litigation, or to future motions in the cause seeking to modify orders or judgments in effect on 1 October 1995. 1995 Sess. Laws ch. 319, § 12. Since the order the parties seek to modify in this action was entered prior to 1 October 1995, *i.e.* 17 October 1990, the statutes as they existed prior to 1 October 1995 apply here.

G.S. § 50-16.9 provided in pertinent part: "An order of a court of this State for alimony . . . may be modified . . . at any time, upon motion in the cause and a showing of changed circumstances." *See* G.S. § 50-16.9(a) (1995) (Editor's Note). In general, the change of circumstances required for modification of an alimony order "must relate to the financial needs of the dependent spouse or the supporting spouse's ability to pay." *Rowe v. Rowe*, 305 N.C. 177, 187, 287 S.E.2d 840, 846 (1982). The G.S. § 50-16.5 factors used in making the initial alimony award should be used by the trial court when hearing a motion for modification. *Rowe*, 305 N.C. at 187, 287 S.E.2d at 846. The version of G.S. § 50-16.5 applicable here provided: "(a) Alimony shall be in such amount as the circumstances render necessary, having due regard to the estates, earnings, earning capacity, condition, accustomed standard of living of the parties, and other facts of the

particular case." *See* G.S. § 50-16.5(a) (1995) (Editor's Note). "[T]he 'overriding principle' in cases determining the correctness of alimony is 'fairness to all parties.' " *Fink v. Fink*, 120 N.C. App. 412, 418, 462 S.E.2d 844, 850 (1995) (quoting *Marks v. Marks*, 316 N.C. 447, 460, 342 S.E.2d 859, 867 (1986)), *disc. review denied*, 342 N.C. 654, 467 S.E.2d 710 (1996).

Defendant contends the trial court miscalculated plaintiff's actual gross annual income: (1) when it failed to utilize the gross annual income he reported in his federal income tax returns; and (2) when it did not count the cash reserves pledged to the bank by plaintiff's corporation as part of plaintiff's gross annual income.

Although the amount of income reported for tax purposes is relevant evidence, this amount is not necessarily equivalent to annual gross income for alimony purposes. *See Britt v. Britt*, 49 N.C. App. 463, 471, 271 S.E.2d 921, 927 (1980). In *Britt*, this Court stressed the differences between actual income and taxable income stating: "[b]ecause plaintiff's business expenses, including depreciation on his equipment, as well as his alimony payments, are deductible from his total income in determining his adjusted gross income . . . that figure is not appropriate for determining his *actual ability* to meet his alimony payments." *Id.* (Emphasis added).

In determining a supporting spouse's gross income, the critical issue is the supporting spouse's actual ability to make alimony payments. *See id.* In assessing plaintiff's ability to pay alimony, we apply the principle that "[p]ayment of alimony may not be avoided merely because . . . [a supporting spouse] has remarried and voluntarily assumed additional obligations." *Britt*, 49 N.C. App. at 473, 271 S.E.2d at 928 (quoting *Sayland v. Sayland*, 267 N.C. 378, 383, 148 S.E.2d 218, 222 (1966)). In addition, the rationale employed by this Court in reviewing a trial court's assessment of a dependent spouse's needs in *Beaman v. Beaman*, 77 N.C. App. 717, 336 S.E.2d 129 (1985) fairly applies in this context as well. In *Beaman*, this Court held a trial court erred in its alimony calculation by failing to determine the extent to which a dependent spouse's business and personal expenses were duplicative. *Id.* at 724, 336 S.E.2d at 133. The Court stated: " ' "Alimony" means payment for the support and maintenance of a spouse. . . .' It does not mean payment for the support and maintenance of a spouse's business ventures." *Id.*

By deducting the cash reserves pledged to the bank by plaintiff's corporation from his annual gross income the trial court, in effect,

placed the burden of this voluntarily assumed business investment on defendant, the dependent spouse. Just as a supporting spouse is not required to pay for the maintenance and support of a dependent spouse's business ventures, a dependent spouse also should not be made to bear the financial burden of a supporting spouse's business investment. The trial court erred by excluding the cash reserves pledged to the bank by plaintiff's corporation from plaintiff's annual gross income.

Plaintiff contends any error in this calculation was not prejudicial to defendant because the trial court based its calculation of alimony solely on a change in defendant's needs and not on plaintiff's ability to pay. We disagree. The trial court's findings of fact and conclusions of law do not indicate whether the increase in defendant's income was the dispositive factor justifying the reduction of alimony. In addition, no single factor under G.S. § 50-16.5(a) should be viewed in isolation in calculation of the proper amount of alimony as this statute requires the trial court to assess all of the enumerated factors along with "other facts of the particular case." G.S. § 50-16.5(a). Similarly, in *Britt*, this Court held a determination of changed circumstances, based solely on the parties' incomes, was error because calculation of alimony requires a trial court to compare "[t]he present overall circumstances of the parties" with "the circumstances existing at the time of the original award." *Britt*, 49 N.C. App. at 474, 271 S.E.2d at 928. The trial court erred in calculating plaintiff's annual gross income. On remand, the court should evaluate the parties' motions for modification of alimony in light of a proper assessment of plaintiff's annual gross income.

**[3]** Defendant next contends the trial court erred by modifying her accustomed standard of living from that determined in the 1990 order. We agree.

The court made the following pertinent findings and conclusions in the 1995 order:

### FINDINGS OF FACT

9. . . . Defendant remains a dependant spouse and Plaintiff remains a supporting spouse, *for purposes of maintaining Defendant's current accustomed standard of living.*

10. Now some five years after the prior Court Order, *it is difficult, if not impossible to artificially now maintain the fictional "accustomed standard of living" that existed on June 5, 1987;*

**BARHAM v. BARHAM**

[127 N.C. App. 20 (1997)]

*so much has changed in the parties lives and their worlds in the ensuing 8 years. The Court needs now to concern itself with essentially the currently expected standard of living of Defendant and the parties' child,* considering those same factors as were considered by the previous Court and are mandated by statute and case law to be considered.

\* \* \*

19. *Defendant has not ever returned to the standard of living she enjoyed during the parties' marriage.* Until his remarriage to his current wife, Plaintiff did not enjoy a standard of living anywhere near that he enjoyed during the parties' marriage. . . .

\* \* \*

24. *Neither Plaintiff nor Defendant lived after separation at their married standard of living.* Only when Plaintiff remarried did he begin to approximate his previous standard of living, due mainly to the income of his current wife. . . .

\* \* \*

## CONCLUSIONS OF LAW

\* \* \*

2. Defendant is dependant on Plaintiff and remains in need of maintenance and support from Plaintiff to maintain a standard of living *for today* and based upon the estates, earnings, and conditions of the parties for today.

(Emphasis added).

The critical issue is whether a trial court may rely on the parties' accustomed standard of living evaluated as of the hearing date rather than on the accustomed standard of living during the marriage when deciding whether to modify the amount of alimony under G.S. § 50-16.9.

"Accustomed standard of living" is one of the factors under G.S. § 50-16.5 that must be considered by a court on a motion for modification of alimony based on changed circumstances. *See* G.S. § 50-16.5(a); *Rowe,* 305 N.C. at 187, 287 S.E.2d at 846. Our Supreme Court has defined the phrase "accustomed standard of living" used in G.S. § 16.5 as follows:

The . . . phrase clearly means more than a level of mere economic survival. Plainly, in our view, it contemplates the economic standard established by the marital partnership for the family unit *during the years the marital contract was intact.* It anticipates that alimony, to the extent it can possibly do so, *shall sustain that standard of living for the dependent spouse to which the parties together became accustomed.*

*Williams v. Williams,* 299 N.C. 174, 181, 261 S.E.2d 849, 855 (1980) (emphasis added). As explained in *Williams,* alimony is designed to enable the dependent spouse to achieve the standard of living she or he enjoyed during the marriage. Here, the trial court unequivocally disregarded this principle and, instead, based alimony on the standard of living the parties maintained after the divorce. This approach was error prejudicial to defendant and requires remand for proper determination of the alimony amount in light of the accustomed standard of living of the parties during the marriage.

**[4]** Defendant next contends the trial court erred by denying her attorney's fees in regard to plaintiff's motion for a decrease in alimony and her motion for an increase in alimony. To obtain an award of attorney's fees in a proceeding seeking a modification of alimony, "the party seeking the fees must show: (1) that he or she is a dependent spouse; (2) that he or she is entitled to the relief demanded based upon all the evidence; and (3) that he or she has insufficient means to defray the expenses of the proceeding. *Cecil v. Cecil,* 74 N.C. App. 455, 459, 328 S.E.2d 899, 901 (1985). Since we have reversed and remanded the court's modification of alimony, it remains to be determined whether defendant is entitled to the relief she seeks on this issue. Since entitlement to the relief sought is necessary for an award of attorney's fees in this context, we decline to address the attorney's fees issue further.

**[5]** Defendant next contends the trial court erred by failing to make its increase in child support effective as of the date of her motion filed on 15 July 1994. We disagree. Although a trial court "has the discretion to modify a child support order as of the date the petition to modify is filed," *Mackins v. Mackins,* 114 N.C. App. 538, 546, 442 S.E.2d 352, 357, *disc. review denied,* 337 N.C. 694, 448 S.E.2d 527 (1994), it is not required to do so. The trial court did not abuse its discretion by not making its order modifying child support effective as of the date of defendant's motion.

**BARHAM v. BARHAM**

[127 N.C. App. 20 (1997)]

[6] Finally, defendant contends the trial court erred by failing to apply the consumer price index to make proper cost of living adjustments when comparing her reasonable alimony needs as determined in the 1990 order to her reasonable needs as of the effective date of the 1995 order. We disagree.

In essence, defendant contends the trial court was required to evaluate the dollar amount of her reasonable needs as found in the 1990 order in a manner which reflects what this amount would be in 1995 dollars. She cites no cases which require such an updating of findings in a previous alimony order and we have found none. In fact, we have previously observed that the general reliability of consumer price index statistics has not been established. *Snipes v. Snipes*, 118 N.C. App. 189, 197, 454 S.E.2d 864, 869 (1995) (citing *Falls v. Falls*, 52 N.C. App. 203, 218-19, 278 S.E.2d 546, 556-57, *disc. review denied*, 304 N.C. 390, 285 S.E.2d 831 (1981)). Here, the trial court made findings regarding defendant's reasonable expenses and needs as of the 1995 hearing. In order to obtain an increase in alimony, defendant was required to carry her burden to show a change of circumstances pursuant to G.S. § 50-16.9. She was not entitled to an automatic updating of her reasonable needs and expenses based on the consumer price index. This assignment of error is without merit.

## II. Plaintiff's Cross Appeal

In his brief, plaintiff has expressly abandoned his cross appeal and, therefore, we do not address the issue presented therein.

Reversed in part, affirmed in part, and remanded.

Judge GREENE concurs.

Judge WALKER concurs in part and dissents in part.

Judge WALKER concurring in part and dissenting in part.

I vote to affirm the trial court's order in its entirety. I respectfully dissent from the majority opinion which holds the trial court erred in concluding that plaintiff's gross income for the purpose of calculating his child support and alimony obligations did not include his corporation's cash reserve. I further dissent from the majority opinion which concludes the trial court erred in failing to properly determine the alimony "in light of the accustomed standard of living of the parties during the marriage."

The Child Support Guidelines provide that

[i]n general, income and expenses from self-employment or operation of a business should be carefully reviewed to determine an appropriate level of gross income **available** to the parent to satisfy a child support obligation. **In most cases, this amount will differ from a determination of business income for tax purposes.**

Guidelines at 3 (emphasis added).

Here, the trial court found that although plaintiff's corporation maintained a sizeable cash reserve, this reserve was fully encumbered by the creditor bank and could not be used by plaintiff or his current wife. The trial court also noted that although the cash reserve was reported as income for Subchapter S tax purposes, the reserve would only become income available to plaintiff if the assets of the corporation were sold. Because the trial court should only consider funds actually and presently available to an obligor in calculating child support and alimony obligations, the trial court's conclusion that "where the cash reserve is required to be deposited in and is held by a creditor/bank, it is not considerable [sic] as 'income' available in computing alimony and/or support," should be affirmed.

In addition, the trial court did not abuse its discretion in reducing plaintiff's alimony obligation. The amount of alimony awarded by the trial court "is not reviewable on appeal in the absence of an abuse of discretion." *Quick v. Quick*, 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982). While consideration must be given to the estates and earnings of both spouses, as well as the needs of the dependent spouse, the determination of the amount of alimony awarded " 'is a question of fairness and justice to all parties.' " *Id. (quoting Beall v. Beall*, 290 N.C. 669, 674, 228 S.E.2d 407, 410 (1976)).

Here, the trial court considered evidence of the parties' estates and earnings, in addition to defendant's needs as a dependent spouse. The trial court found that defendant's reasonable needs to enable her to maintain her standard of living as established in the 1990 order was in excess of $2,500.00 per month. The court further found that at the time of the 1990 order defendant was earning $1,208.00 gross income per month with a net income of $800.00 per month, and at the time of the 1995 order, defendant's gross earnings were $2,860.00 per month with a net income of $2,136.00 per month—more than twice her gross income at the time of the previous order. Further, defendant's debts had been reduced to one-eighth of what they had been in 1990, and

she had also obtained substantial equity in her house. After considering this evidence and determining that plaintiff's gross income did not include his corporation's cash reserve, the trial court determined that a change of circumstances had occurred warranting a reduction in plaintiff's alimony obligation. Because the trial court properly considered all relevant factors in determining the amount of plaintiff's alimony obligation, it did not abuse its discretion in reducing such obligation.

Finally, the trial court did not modify defendant's accustomed standard of living from that determined in the 1990 order. The trial court acknowledged that, at the time of the 1990 order, defendant needed an amount in excess of $2,500.00 per month to maintain her accustomed standard of living during the marriage, and that defendant never returned to such standard of living. However, according to defendant's affidavit, her reasonable living expenses in 1995 were found to be $2,643.00. When the alimony awarded to defendant by the trial court ($532.00) is added to defendant's present net income ($2,136.00), the result is an amount which exceeds $2,500.00. I conclude the trial court considered defendant's accustomed standard of living as set forth in the 1990 order and that further findings are not necessary in determining the amount of defendant's alimony award in the 1995 order.

For the above reasons, I would affirm the trial court's order.