IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 19-524

Filed: 4 February 2020

Cumberland County, No. 11 CVD 3603

SHANNON MORRIS (POWELL), Plaintiff,

v.

DEAN POWELL, Defendant.

Appeal by Plaintiff from order entered 4 February 2019 by Judge Edward A. Pone in Cumberland County District Court. Heard in the Court of Appeals 29 October 2019.

> *Lewis, Deese, Nance & Briggs, LLP, by Renny W. Deese, for Plaintiff.*
>
> *Schiller & Schiller, PLLC, by David G. Schiller, for Defendant.*
>
> INMAN, Judge.

This appeal presents a question of first impression in North Carolina: when the child of divorced parents leaves the custodial parent's home to live on his own, but is not decreed by a court to be legally emancipated, does the non-custodial parent's obligation to pay child support automatically terminate? Based on the express language and common sense application of governing statutes, the answer is no.

Shannon Morris ("Mother") appeals from an order entered following the filing of a contempt motion against Dean Powell ("Father") for failing to make court-ordered

payments after their child moved out of Mother's home. Mother argues that the trial court erred in (1) failing to enforce Father's child support obligation for January through April 2018—the months immediately following their son's leaving home and before the court hearing—and (2) failing to hold Father in contempt of court. We hold that the trial court erred in failing to enforce the child support obligation and remand for further proceedings in that regard. We affirm the trial court's conclusion that Father had not committed willful contempt.

## I. <u>FACTUAL AND PROCEDURAL HISTORY</u>

The record below shows the following:

Mother and Father married on 1 January 1994, and as a result of that marriage two minor children were born. Mother and Father divorced and in June 2013 were granted joint custody of Richard,[1] the only remaining minor child of the marriage. Mother received primary physical custody, and Father was ordered to pay Mother one thousand dollars per month as child support.

In August 2016 Richard began living with Father, who then filed a motion seeking to modify custody and child support. The trial court granted Father's motion, awarding him primary physical custody and suspending his child support obligation. The court later ordered Mother to pay child support of $284 per month.

---

[1] A pseudonym is used to protect the identity of the juvenile.

In March of 2017 Richard moved back in with Mother. The trial court entered a consent order granting Mother primary custody and reinstating Father's one thousand dollar per month child support obligation, effective 1 May 2017.

Richard continued to live with Mother until December 2017, when at age seventeen he moved in with his girlfriend and another family. From that time, neither parent provided him with financial support, and he did not return to live with either parent at any time relevant to this appeal.

Because Richard was no longer living with Mother, Father stopped making child support payments in January 2018. In April 2018 Mother filed a contempt motion with the trial court for nonpayment, asserting that Father was in arrears in the amount of four thousand dollars for the period of January through April 2018. In response, Father filed a motion to terminate his child support obligation, retroactive to January 2018.

Following a hearing, the trial court granted Father's motion to terminate his child support obligation effective 1 May 2018. The trial court found that Richard "was living on his own and had essentially emancipated himself without the benefit of a court order." The court also found that Father had not willfully violated the child support order but made no finding as to the arrears owed by Father. It also dismissed Mother's motion for contempt. Mother appeals.

## II. ANALYSIS

## A.  Father's Support Obligation

Mother argues that the child support payments from January to April 2018 vested when they became due, and that the trial court erred when it failed to order Father to pay the arrearage.  We agree.

Under our General Statutes, each court-ordered child support payment is vested when it accrues, and past due payments may not be vacated or modified "in any way for any reason" except as otherwise provided by law.  N.C. Gen. Stat. § 50-13.10(a) (2019).  Father argues that his obligation was terminated when Richard emancipated himself.  Considering our statutes *in para materia* leads us to disagree.

Our General Statutes provide that child support payments "shall terminate" when a child reaches the age of 18 or is "otherwise emancipated." [2]  N.C. Gen. Stat. § 50-13.4(c) (2019).  The supporting parent may unilaterally terminate payments when the conditions of Section 50-13.4(c) are met.  *Leak v. Leak*, 129 N.C. App. 142, 144, 497 S.E.2d 702, 703 (1998).  The question in this case is whether Richard, when he moved out of Mother's home in December 2017, emancipated himself in a manner that satisfies Section 50-13.4(c)(1).  This is an issue of first impression in North Carolina.

Our legislature has provided, in Article 35 of the Juvenile Code, a specific process by which a juvenile may petition a court for a judicial decree of emancipation.

---

[2] Child support payments may still be required after the child turns 18 if the child is still attending school. N.C. Gen. Stat. §§ 50-13.4(c)(2)-(3) (2019).

N.C. Gen. Stat. § 7B-3500 (2019). The statute specifically provides that once the decree is entered, a parent "is relieved of all legal duties and obligations owed" to the emancipated child. *Id.* § 7B-3507. Richard did not pursue judicial emancipation.

Father contends that a decree was not necessary to terminate his child support obligation because Richard emancipated himself. Section 50-13(c)(1) does not explicitly refer to a decree of emancipation. In this respect, the statute is ambiguous.

When a statute is ambiguous, we determine the intent of the legislature and carry out that intention "to the fullest extent." *Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990). In this case, we must determine whether Section 50-13.4(c)(1) terminates a parent's child support obligation only upon entry of a judicial decree of emancipation or, in the alternative, if the legislature intended a broader understanding of the term "emancipation" to apply. The answer to this question is found in another section of the Juvenile Code, which provides that Article 35 supersedes common law provisions for emancipation. Based on this unambiguous expression of the legislature's intent, we hold that a minor must be judicially emancipated to terminate a parent's child support obligation.

Prior to the enactment of Article 35, emancipation was a common law doctrine in North Carolina. A child could be automatically emancipated by marriage or turning twenty-one. *Gillikin v. Burbage*, 263 N.C. 317, 322, 139 S.E.2d 753, 758 (1965). Partial or complete emancipation could also occur in several different ways,

such as abandonment by the parent, subject to a fact-based analysis. *Id.* Other states recognize common law doctrines of *de facto* or self-emancipation, under which the specific facts are weighed to determine if a minor has "moved beyond the care, custody, and control of a parent." *See, e.g., In re Marriage of Baumgartner*, 237 Ill. 2d 468, 480, 930 N.E.2d 1024, 1031 (2010). Father asks us to adopt this understanding of the term emancipation in applying Section 50-13.4(c)(1).

Father's argument is negated by the final provision of Article 35: "A married juvenile is emancipated by this Article. All other common-law provisions for emancipation are superseded by this Article." N.C. Gen. Stat. § 7B-3509 (2019). Because we must read statutes concerning the same subject "*in pari materia,* as together constituting one law, and harmonized to give effect to each," *Williams v. Williams,* 299 N.C. 174, 180-81, 261 S.E.2d 849, 854 (1980) (internal citations omitted), Article 35 precludes us from accepting common law methods of emancipation for the purposes of Section 50-13.4(c)(1). Although the trial court found as a fact that Richard "had essentially emancipated himself without the benefit of a court order," the legislature has made clear that emancipation is defined by statute, occurring only as provided by Article 35. Accordingly, Father's child support obligations could not have automatically terminated absent a decree of emancipation.

Mother's brief also challenges several of the trial court's findings of fact regarding Richard's independence from her financial support and, in conclusion,

requests that this Court remand this case with instructions that Father be ordered to pay $10,000 in child support. Mother offers no explanation of how she calculated that amount, though it appears to be the sum of payments that would have vested after April 2018 had the trial court not terminated Father's child support obligation.[3] But Mother does not challenge the trial court's conclusion of law terminating Father's prospective child support obligations, nor does she argue that the challenged findings of fact are material to this or any other of the trial court's conclusions of law. "Issues in support of which no reason or argument is stated will be taken as abandoned." N.C. R. App. P. 28(b)(6) (2019). None of the challenged findings is material to Mother's argument or our conclusion that, as a matter of law, vested child support obligations cannot be retroactively terminated. So we need not address those challenges and do not address Mother's unexplained claim for an award of $10,000.

Our dissenting colleague offers an equitable analysis and concludes that the trial court did not err in terminating Father's child support obligation going forward from the date of the hearing. This analysis was not argued by Father, perhaps because the issue was not raised in Mother's appeal.

We acknowledge our colleague's equitable concerns. But the issue of whether the trial court erred in terminating Father's prospective child support obligations has

---

[3] While the language of the trial court's order is slightly unclear in that it purports to "suspend," rather than terminate, Father's child support obligation, it explicitly grants Father's motion in which Father requests his child support obligation be terminated. Therefore we do not find any ambiguity in the court's order and read it as terminating Father's child support obligation.

been abandoned by Mother. Also, the authority to remedy perceived inequities in our statutes lies with the legislature and not the courts. *See Mitchell v. North Carolina Indus. Dev. Fin. Auth.,* 273 N.C. 137, 144, 159 S.E.2d 745, 750 (1968) ("Therefore, so long as an act is not forbidden, the wisdom of the enactment is exclusively a legislative decision.")

## B. Contempt

Mother also argues that the trial court erred in failing to hold Father in contempt of court. When reviewing contempt proceedings, we are limited to determining whether there is competent evidence to support the findings of fact and whether those findings support the conclusions of law. *Watson v. Watson*, 187 N.C. App. 55, 64, 652 S.E.2d 310, 317 (2007). We will not disturb on appeal findings of fact that are supported by any competent evidence. *Id.* Findings of fact that are not challenged on appeal are conclusive and binding on this Court. N.C. R. App. P. 10(a) (2019); *Koufman v. Koufman,* 330 N.C. 93, 98, 408 S.E.2d 729, 731 (1991).

To hold a party in civil contempt for failure to comply with a court order, the trial court must find, among other facts, that the party's noncompliance was willful. *Shippen v. Shippen,* 204 N.C. App. 188, 190, 693 S.E.2d 240, 243 (2010) (citing N.C. Gen. Stat. § 5A-21 (2019)). The trial court here found that Father "did not inten[d] to willfully violate this Court's order" because "he was under the mistaken apprehension that he could simply stop paying" after his son Richard ceased living

with Mother. Mother does not challenge this finding on appeal. As we are bound by this finding of fact, and contempt requires willful noncompliance, we affirm the trial court's decision not to hold Father in contempt.

## III. CONCLUSION

For the above reasons, we vacate the trial court's order excusing Father from paying past due child support and remand to the trial court to calculate the amount Father owes for the period of January through April 2018, and for additional findings as necessary to that order. We affirm the trial court's dismissal of Mother's motion for contempt.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

Judge HAMPSON concurs by separate opinion.

Judge BERGER concurs in part and dissents in part by separate opinion.

No. COA19-524 – *Morris (Powell) v. Powell*

BERGER, Judge, concurring in part, dissenting in part in separate opinion.

Child support payments are not intended to be a wealth transfer from non-custodial parent to non-custodial parent. Rather, child support payments are intended to provide for "the reasonable needs of the child[.]" N.C. Gen. Stat. § 50-13.4 (c) (2017). Accordingly, the trial court did not err when it suspended Defendant's child support obligation, and I respectfully dissent. I concur with the remainder of the majority opinion.

As a preliminary matter, the majority fails to address the standard of review for child support orders. On appeal,

> child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion. Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law.

*Ferguson v. Ferguson*, 238 N.C. App. 257, 260, 768 S.E.2d 30, 33 (2014) (*purgandum*).

As set forth below, the trial court did not abuse its discretion, and the majority has not demonstrated that the trial court's decision was "manifestly unsupported by

reason." *Head v. Mosier*, 197 N.C. App. 328, 332, 677 S.E.2d 191, 195 (2009) (citation and quotation marks omitted).

The trial court determined that neither parent had custody of the minor child since December 2017, and the minor child was self-sufficient by June 2017. This was a changed circumstance from the prior child support order in which the mother had actual physical custody of the minor child. The trial court further determined that the amount of support necessary to meet the child's reasonable needs at the time of the hearing was $0.00, in part because "he got a job, leased an apartment and obtained a car . . . [and] was living entirely on his own." In addition, the child support payments that were made by Defendant to Plaintiff were not being used for the benefit of the minor child. Based upon these findings, the trial court suspended Defendant's child support obligation.

The purpose of child support is to provide financial "support of a minor child . . . to meet the reasonable needs of the child for health, education, . . . maintenance, . . . [and] accustomed standard of living of the child." N.C. Gen. Stat. § 50-13.4(c). In addition, child support orders "may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." N.C. Gen. Stat. § 50-13.7(a) (2017). Defendant alleged in his motion that "there have been changed circumstances sufficient to modify the prior order in that the minor child has ceased residing with Plaintiff[.]"

The threshold question, which the majority does not address, is whether Defendant made a showing of changed circumstances. The unchallenged findings of fact by the trial court include:

> 11. The minor child informed Plaintiff/Mother that he had a plan to live with another family; Plaintiff/Mother disagreed with his plan but still reinforced their rules and stated that he was free to leave if he didn't follow their rules.
>
> 12. In mid-December 2017, the minor child left Plaintiff/Mother's home and moved in with the other family and his girlfriend at the time.
>
> 14. The minor child had a part time job and began to support himself with the help of this other family; he did however continue to attend school for a short period of time and was becoming self-sufficient.
>
> 17. Defendant/Father felt that the child support should not be paid to Plaintiff/Mother if the child was no longer living with Plaintiff as in his word's child support is to provide support for his son and not to support the mother.
>
> 28. The child was living on his own and had essentially emancipated himself without the benefit of a court order.

These unchallenged facts are binding on appeal. *Carpenter v. Carpenter*, 225 N.C. App. 269, 270, 737 S.E.2d 783, 785 (2013) (citation omitted).

In addition, the trial court made the following findings of fact, which were supported by competent evidence:

18.     The minor child went to school for a month or so and then dropped out and moved to Hickory with his older sister sometime in April 2017.

19.     At that time, he obtained some type of employment and promised to attend school; but he didn't complete school and he stayed there until June 2017 when he moved to Hildebran, North Carolina.

20.     When he moved to Hildebran, NC, somehow but unclear to the court; even though he was only 17 years of age he got a job, leased an apartment and obtained a car; at this time, he was living entirely on his own.

21.     The evidence is clear that neither parent was providing support to the minor child and he was not in either parent's custody but was on his own.

22.     The court finds that Plaintiff/Mother abrogated her responsibility as a parent by allowing the child to de facto emancipate himself.

24.     The amount of support necessary to meet the child's needs from either of the parents to meet the child's needs at this time was zero.

31.     The evidence clearly demonstrates that Plaintiff/Mother did not extend the amount of the court ordered child support to the child.

36.     By June 2017 the child was essentially self-sufficient.

"The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary." *Cushman v. Cushman*, 244 N.C. App. 555, 558, 781 S.E.2d 499, 501 (2016) (citation and quotation marks omitted).

The child was no longer residing with either parent. This fact, in and of itself, is a changed circumstance. The trial court essentially found that there were two non-custodial parents, and one non-custodial parent obligated to provide child support to another non-custodial parent. The "child support" payments made by Defendant were not being used for the benefit of the child, and the amount of support necessary to meet the child's needs from the non-custodial parents was zero. Based upon these facts, Defendant established changed circumstances sufficient to *modify or vacate* Defendant's child support obligation. N.C. Gen. Stat. § 50-13.7(a).

"The amount of a parent's child support obligation is determined by application of The North Carolina Child Support Guidelines (Guidelines)." *Barham v. Barham*, 127 N.C. App. 20, 24, 487 S.E.2d 774, 777 (1997) (citation omitted). One consideration in the application of the Guidelines is the number of overnights the minor child spends with his or her parents. However, the Guidelines would not be applicable here because neither parent has custody of the minor child for more than 243 days (Worksheet A); the parties do not share custody for at least 123 days (Worksheet B); and split custody is not an issue (Worksheet C). An order for child support in this factual scenario requires consideration of "facts relating to the reasonable needs of the child for support . . . [and] the basis for the amount ordered." N.C. Gen. Stat. § 50-13.4(c).

The trial court found Defendant's child support payments exceeded the reasonable needs of the child as the child's reasonable needs were $0.00. Moreover, the trial court determined that Plaintiff "clearly demonstrate[d] that [she] did not extend the amount of the court ordered child support to the child." Because continued payment for child support in this circumstance would be unjust, *see* N.C. Gen. Stat. § 50-13.4(c), the trial court did not abuse its discretion in suspending Defendant's child support obligation pursuant to N.C. Gen. Stat. § 50-13.7(a).

Because there was a showing of changed circumstance, the trial court did not abuse its discretion when it suspended Defendant's child support obligation. It runs counter to common sense that a non-custodial parent would be required to continue paying child support to another non-custodial parent in this factual scenario.

No. COA19-524 – *Morris v. Powell*

HAMPSON, Judge, concurring.

I fully concur in both the reasoning and result reached in Judge Inman's majority opinion. I write separately only to add a few observations.

I.

First, as the discussion in the majority and dissenting opinions illustrate, the basis for the trial court's Order "suspending" Father's child support obligation as of 1 May 2018 in this case is unclear. On one hand, as the dissent perceives, the trial court appears to address the issue within the context of a modification of child support[4] and a deviation from the Child Support Guidelines[5] to set Defendant-Father's child support obligation at zero. This approach seems supported by the trial court's oral rendition of its ruling where it stated:

> The Court therefore determines that a modification should be granted to show the sum of child support as zero. And child support should be suspended, effective May 1, 2018.
>
> There is just cause to allow the modification and to deviate to zero as the amount of child support.

---

[4] Although one likely could be inferred, the trial court did not make an express determination that a substantial change of circumstances existed justifying modification of child support. *See Beamer v. Beamer*, 169 N.C. App. 594, 595, 610 S.E.2d 220, 222 (2005).

[5] Treating this as a deviation from the Guidelines in this case seems misplaced. I see nothing in the Record before us showing Defendant-Father's child support was *ever* calculated based on the Guidelines. Moreover, there is nothing on this Record to establish what Defendant-Father's support obligation under the Guidelines would have been in this case as of the date of the 2018 hearing from which to deviate.

> The Court further finds the Defendant father is not in [willful] contempt, this Court has jurisdiction over the parties and the subject matter, and the child support should be suspended and/or terminated effective May 1, of 2018.

On the other hand, however, other than a passing mention of modification, the trial court's written and entered Order suspending Defendant-Father's child support obligation is couched in terms of stopping child support on the basis of the child's self-emancipation. The practical reality is the trial court effectively terminated Defendant-Father's child support obligation. The evidence showed the parties' son turned 18 on the very day the trial court heard evidence in this case. It seems plain, on the facts of this case, this was not some temporary suspension of child support as it would be, at best, highly unlikely Plaintiff-Mother could obtain a future court order reinstating support now that the child is eighteen (even if her son was not yet twenty and progressing in his studies).[6] *See* N.C. Gen. Stat. § 50-13.4(c) (2019).

## II.

Second, although the approach employed by the trial court and dissent in this case has, at least at first glance, some common-sense appeal, the broader impact of embracing a rule that permits a trial court to terminate child support for a nonjudicially emancipated minor creates other practical problems. Here, based on its finding the parties' son had "de facto emancipated himself," the trial court only

---

[6] To be fair, both parties presented testimony their son had been progressing or otherwise intended to keep progressing toward a high school diploma or its equivalent.

purported to suspend Defendant-Father's child support obligation. However, under North Carolina law, *both* parents generally share primary responsibility for the support of their child. *See* N.C. Gen. Stat. § 50-13.4(b). This is illustrated by our Child Support Guidelines, which calculate the total child support obligation of the parents based on combined adjusted monthly gross income. *N.C. Child Support Guidelines*, N.C. Annotated Rules 60, 63 (2020).

Thus, there are two potential longer-term practical impacts of accepting the "de facto emancipation" concept in child support cases. Viewed in its most literal sense, a determination a minor has self-emancipated would mean both parents' child support obligation would terminate because the child would have no need of *any* parental support. This interpretation turns the minor into an equitable orphan with no party having any legal obligation to provide support for the child.

The other reading of this concept is that only the support obligation of the payor-parent is terminated by a child's self-emancipation. This approach leaves the remaining parent as the party solely responsible for the support of the minor child. In many cases, as in this case, this will be the primary custodial parent. The custodial parent remains responsible for maintaining the custodial home (for if, and when, the self-emancipated child returns) and remains legally obligated for the support of the minor child.

Indeed, scratching the surface of the evidence presented even in this case illustrates this point and demonstrates the parties' son was not wholly independent of his parents' support. For example, Defendant-Father conceded Plaintiff-Mother continues to pay their son's cellphone bill. He also testified, although their son makes payments to Plaintiff-Mother, it is Plaintiff-Mother who is the responsible party on the son's car insurance.[7] Indeed, when the son was in a car accident, Defendant-Father testified the son returned to Plaintiff-Mother's home for several days because "he had no choice" as "he had no ride." Plaintiff-Mother offered evidence their son returned home intermittently and that throughout the year he was living away from home she would provide him groceries along with some financial help towards bills.

The son's employment situation during his year of self-emancipation was fluid. He began working at a restaurant; then, after he moved in with his sister near Hickory, he began working at a carwash—a job Plaintiff-Mother testified was procured by her current husband. Defendant-Father testified the son had now obtained employment laying cable—a job he had started only three days prior to the evidentiary hearing.

The son's living arrangements during that year were even less sure. Upon moving out of his mother's home, he lived with another family that helped provide

---

[7] There was apparently no consideration of which party is responsible for any health insurance or possible medical expenses. The history of the case reflects Defendant-Father had previously been responsible for carrying insurance on the son but that the parties were required to split uninsured costs 50/50. The trial court's Order does not expressly address this issue.

support. He then moved in with his older sister, where Plaintiff-Mother testified she would regularly deposit funds into his sister's account to help cover expenses. Defendant-Father could not explain how his minor son was able to enter into a lease with his current landlord except to explain the son and the landlord had reached some understanding and his son was currently living in a trailer with a "fellow named Lanny."

Thus, even on the facts of this case, the evidence reflects the parties' then-minor son remained at some level dependent on his parents and, in particular, Plaintiff-Mother for support. It is true these needs may not have risen to the level of Defendant-Father's then-existing child support obligation. Upon proper evidence and findings of fact as to the child's actual reasonable needs, the parents' respective abilities to pay, and other relevant factors, a downward modification of some amount may well have been in order. Likewise, the facts of this case may well have justified termination of child support as soon as the child reached the age of eighteen. *See* N.C. Gen. Stat. § 50-13.4(c). However, in the absence of judicial emancipation, the trial court's ruling that "suspended and/or terminated" Defendant-Father's child support obligation for the then-minor son was error.