**Nancy C. FARR, Respondent,**

v.

**Lawrence H. CLONINGER, Movant–Appellant.**

**No. 20742.**

Missouri Court of Appeals, Southern District, Division One.

Jan. 30, 1997.

1. All statutory references are to RSMo 1991, unless otherwise noted.

Stephen K. Paulus, Woodward, Evans and Paulus, L.L.C., Cuba, for movant–appellant.

Albert Crump, Jr., Albert Crump, Jr., P.C., Rolla, for respondent.

GARRISON, Judge.

The trial court entered an order modifying the dissolution of marriage decree of Lawrence Cloninger (Father) and Nancy Farr (Mother). In response to Father's appeal from that order, we affirm in part and reverse in part.

The marriage of the parties was dissolved in December, 1981, and Father was awarded custody of their only child, born September 5, 1977. Pursuant to a stipulation of the parties in August, 1983, the court ordered Mother to pay monthly child support of $30 during the months of September through June of each year. The child, however, lived with Mother from September, 1989 until June, 1993, when she moved back with Father.

Father filed a motion to modify on November 18, 1993 seeking to increase the amount of child support paid by Mother. In her "Answer to Motion to Modify and Counterclaim" filed on January 25, 1994, Mother requested that the court modify the decree concerning custody and support of the child, and that Father be ordered to pay her support for the period of time the child had resided with her. In April, 1994, the child returned to live with Mother because of financial problems encountered by Father.

The court heard the motions to modify on October 4, 1995, and awarded Mother the primary physical custody of the child (who was then eighteen years old). It also adopted Mother's Form 14 and ordered Father to pay child support of $350 per month, retroactive to November 18, 1993 (the date he filed his motion to modify), but gave him a credit for child support previously paid by him in the amount of $2,884; ordered Father to maintain the level of health insurance coverage then existing on the child; and ordered the parties to equally pay any of the child's uninsured medical expenses, as well as the expense for the tuition and fees of the child's college education. On this appeal, Father takes issue with the award of child support, both as to amount and the extent to which it should be retroactively applied, as well as the requirement that he both maintain the child's medical insurance and pay for one-half of any of her uninsured medical expenses.

■ Our review of an order modifying a prior dissolution decree is pursuant to Rule 73.01(c). *Amyx v. Collins*, 914 S.W.2d 370, 373 (Mo.App. S.D.1996). As that rule is construed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), the judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law.

■ In determining the sufficiency of the evidence, we accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). "The determination to award a modification in child support lies 'within the legitimate discretion of the trial court and we review only to come to a conclusion as to whether there has been an abuse of discretion or an aberrant application of the law.'" *Luker v. Luker*, 861 S.W.2d 195, 198 (Mo.App. W.D.1993) (quoting *Cooperman v. Holdinghausen*, 629 S.W.2d 489, 490 (Mo.App. E.D.1981)). "Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *In re Marriage of V—A—E—*, 873 S.W.2d 262, 268 (Mo.App. S.D.1994).

For purposes of continuity, we will discuss Father's points on this appeal out of order. In one of his points relied on, he contends that the trial court erred, as a matter of law, in ordering him to pay retroactive child support from November, 1993 through March,

1994, because the child was in his legal custody and was residing with him during that time.

■ The trial court ordinarily has the discretion to order that a modified child support award be retroactive. *Porath v. McVey*, 884 S.W.2d 692, 697 (Mo.App. S.D.1994); *Wexelman v. Donnelly*, 782 S.W.2d 72, 76 (Mo.App. E.D.1989). In both *Porath* and *Wexelman*, however, the minor who was the subject of the proceeding had apparently continued to be in the legal and physical custody of the parent seeking the modification.

■ Here, the original dissolution decree awarded custody of the child to Father. That order, as it pertained to child custody, continued unmodified until the entry of the order which is the subject of this appeal. The child was also in the actual physical custody of Father during part of the time covered by the retroactive award, to wit: November 18, 1993 through March, 1994.

■ In making its decision concerning retroactivity of a child support award, the trial court should consider all factors relevant to the issue and balance the equities as called for by the facts and circumstances of that particular case. *Porath v. McVey*, 884 S.W.2d at 697. In this regard, we note that the purpose of child support is to provide for the needs of the child. *Weaks v. Weaks*, 821 S.W.2d 503, 507 (Mo. banc 1991). In this case, there was no evidence suggesting that the child's needs were not met by Father while he had legal and actual custody of her during the period of time in question. Likewise, there was no evidence indicating that Mother was required to incur expense to provide for the child's needs during that period.

Under the circumstances of this case, we have concluded that the trial court abused its discretion in ordering that the child support award be retroactive to include the period of November 18, 1993 through March, 1994.[1]

In another point relied on, Father contends that the trial court erred in adopting Mother's Form 14 because it included, as income attributable to him, fringe benefits furnished by his employer. As a result, he argues that his income, as shown on Mother's Form 14, was artificially large with the result that the amount of presumed child support owing by him was increased.

■ Mother's Form 14 included fringe benefits furnished by the employers of each of the parties. Father argues that it was error to attribute, as income to him, $2,033 furnished by his employer for insurance benefits, and $2,911 for "retirement."

Father's insurance benefits consisted of $166.96 per month for health insurance and $2.50 per month for life insurance. The "retirement" benefit referred to by Father was apparently his employer's match of a deduction from his income for a retirement plan. The evidence indicated that Father did not have the option to receive cash in lieu of either the insurance benefits or the money contributed by the employer on the retirement plan.

The "Directions for Completion of Form 14" provide that "[s]ignificant employment-related benefits received by a parent may be counted as income." The use of the term "may" in connection with the Directions for Completion of Form 14 indicates the existence of discretion in the trial court. *See Schubert v. Tolivar*, 905 S.W.2d at 929.

It is clear that in calculating child support pursuant to Rule 88.01 and Form 14, the

---

1. Two of Father's other points relied on are moot because of our decision concerning the retroactivity of the order. In one, he complains that the trial court erred in ordering that the $350 per month child support award, calculated pursuant to the Form 14 child support guidelines which took effect April 1, 1994, was retroactive to cover the period of November 18, 1993 through March, 1994. He argues that this constituted the retroactive application of the guidelines, relying on *Schubert v. Tolivar*, 905 S.W.2d 924, 928 (Mo. App. E.D.1995). Because of our holding that the

trial court abused its discretion in ordering Father to pay retroactive child support for the same period of November 18, 1993 through March, 1994, we need not decide this point.

In another of Father's points relied on, he alleges error in the award of retroactive child support prior to the date Mother's motion to modify was filed (January 25, 1994). This point is also moot because of our decision to reverse that portion of the retroactive award covering the period of November 18, 1993 through March, 1994.

focus is on "income" as opposed to other considerations, such as appreciation of other assets. *See Gordon v. Gordon,* 924 S.W.2d 529, 533 (Mo.App. W.D.1996) (increased value of stock does not constitute "capital gains" which may be included in income for Form 14 purposes). "Income" is defined as "a gain or recurrent benefit usually measured in money that derives from capital or labor" or "the amount of such gain received in a period of time." *Coble v. Coble,* 931 S.W.2d 206, 209 (Mo.App. W.D.1996) (holding that monthly gross income of the parties did not include rental payments made to the parties jointly where there was a dispute about who was to receive them and neither of the parties had actually received any of the money).

The Directions for Completion of Form 14 are also informative in determining the meaning of "income" for the purpose of those calculations. They provide that:

> Gross income includes income from any source, except as excluded below, and includes but is not limited to income from salaries, wages, overtime compensation, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, and spousal support actually received from a person not a party to the order.

A significant feature of this list is that it consists of financial benefits or money received which could have a positive impact on the parent's present ability to pay child support.

■ In *Fulton v. Adams,* 924 S.W.2d 548, 554 (Mo.App. W.D.1996), the court held that pre-tax "flex plan benefits" which could be used to offset the cost of health insurance were appropriately considered as income in making Form 14 calculations. We fail to see why the furnishing of insurance coverage to an employee, thereby saving him that expense, should be any different. Accordingly, we are unable to conclude that the trial court erred in considering the insurance benefits as a part of Father's income for Form 14 purposes.

■ In the instant case, however, there was no immediate benefit to Father from his employer's contribution to the retirement plan. From the record before us, there was no discernible way in which these contributions would be of any assistance to Father in satisfying any child support payments ordered by the trial court. They provided no positive impact on his immediate ability to pay child support. Accordingly, under these facts, we do not believe that the employer's contributions to the retirement plan should have been considered as income received by Father. This conclusion is consistent with the statement in *Gordon v. Gordon,* 924 S.W.2d at 533, where the court said: "Form 14 does not provide for consideration of the increased value of stocks or other marital or non-marital property held by a party when determining child support. Instead, the amount of child support due under Form 14 is calculated based on each parent's income."

The instant case is to be distinguished from *Roberts v. Roberts,* 847 S.W.2d 108, 109 (Mo.App. W.D.1992), where the court approved the inclusion of an employer's contributions to a retirement plan in calculating child support pursuant to Form 14. There, however, the corporation which employed the parent in question was wholly owned by that parent and he was its sole employee. The court specifically noted that the parent "had control of the allocation of available cash of the corporation as among wages or salary and other benefits." *Id.*

We reverse that portion of the judgment requiring Father to pay $350 per month as child support, and remand the case to the trial court for further proceedings on the issue of the amount of child support owing by Father.

In the last of Father's points relied on, he contends that the trial court erred in ordering him to provide medical insurance for the child and to also pay one-half of her uninsured medical expenses. He argues that, in making such an order, the court required him to pay amounts "in addition to" the amount of presumed child support calculated pursuant to Rule 88.01 and Form 14, without

finding that the presumed amount was unjust or inappropriate.

■ Rule 88.01(e) creates a rebuttable presumption that the amount of child support calculated pursuant to Form 14 is the amount to be awarded, but provides that the presumption may be rebutted if the court enters a finding that "the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate." "The rule is clear in its mandate that the trial court not deviate from a Form 14 calculation unless it finds, on the record, that the Form 14 amount is unjust or inappropriate." *Monsees v. Monsees*, 908 S.W.2d 812, 816 (Mo. App. W.D.1995) (quoting *Hamilton v. Hamilton*, 886 S.W.2d 711, 716 (Mo.App. W.D. 1994)).

■ As indicated, the trial court adopted Mother's Form 14 for the purpose of calculating the amount of child support. In doing so, the monthly child support obligation of Father, calculated on the basis of that Form 14, included a credit for maintaining health insurance on the child. Therefore, that portion of Father's point which is premised on the allegation that the trial court ordered him to provide health insurance in addition to the amount of the presumed child support is without merit.

■ The trial court also ordered Father to pay one-half of the child's uninsured medical expenses in addition to the amount it ordered him to pay as child support based on the Form 14 calculations adopted by it. Such a requirement constitutes payment of child support. *Adelman v. Adelman*, 878 S.W.2d 871, 873 (Mo.App. E.D.1994); *In re Marriage of Luna*, 855 S.W.2d 483, 485 (Mo. App. S.D.1993). Accordingly, it causes the amount of child support to be greater than the Form 14 amount. *Epple v. Epple*, 893 S.W.2d 886, 889 (Mo.App. W.D.1995). The trial court, however, made no finding, either on the record or in its decree, that the amount of child support calculated pursuant to the Form 14 was unjust or inappropriate. It was error to require Father to pay one-half of the uninsured medical expenses without making such a finding. *McElroy v. McElroy*, 910 S.W.2d 798, 804 (Mo.App. E.D.

1995); *Epple v. Epple*, 893 S.W.2d at 889; *Adelman v. Adelman*, 878 S.W.2d at 873. The portion of the trial court's order requiring him to do so must be reversed.

We recognize that we have reversed the child support award which is referenced in this point. Because this case is being remanded for further proceedings, the trial court may reconsider the issue of the payment of uninsured medical expenses consistent with this opinion.

The portions of the judgment that ordered Father to pay child support of $350 per month, based on Mother's Form 14, which erroneously included, as income to him, the employer's contribution to his retirement plan; that ordered that the child support payments be retroactive to include the period of November 18, 1993 through March, 1994; and that ordered him to pay one-half of any uninsured medical expenses of the child, are reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. The trial court's judgment is otherwise affirmed.

BARNEY, P.J., and PREWITT, J., concur.