Wendy Lois PEARSON, Respondent,

v.

Jayice PEARSON, Appellant.

No. WD 56444.

Missouri Court of Appeals,
Western District.

Jan. 18, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 29, 2000.

Alison Kathleen Blessing, Liberty, for appellant.

Scott Kreamer, Allan Coon, Olathe, KS, for respondent.

PAUL M. SPINDEN, Presiding Judge.

Jayice Pearson appeals the circuit court's judgment dissolving his marriage to Wendy Lois Pearson. The couple was married on June 3, 1989, and had one child. Jayice Pearson complains of the circuit court's rulings concerning child support, maintenance, division of property, and custody of the child. We affirm the circuit court's judgment in part and reverse in part.

Jayice Pearson contends that the circuit court erred in calculating Form m 14 for child support by attributing an incorrect monthly income to him and by not attributing any income to Wendy Pearson. The circuit court attributed to Jayice Pearson a monthly income of $4500. It found that Jayice Pearson would earn $35,000 per year as a stockbroker, that he would receive $30,000 from the "Reggie White Settlement," [1] and that he would receive significant dividends from his investments. Jayice Pearson complains that no evidence in the record supported the circuit court's finding that he would receive an additional $30,000 payment from the Reggie White settlement. We disagree.

Jayice Pearson testified that on his income and expense statement prepared in March 1998 for use at trial, he listed the $30,000 payment from the Reggie White settlement as anticipated income for 1998. At the trial in April 1998, he explained, however, that he was no longer receiving income from the Reggie White settlement, that the amount had been paid in full and that he had placed it an investment account.

■ Given the contradictory nature of Jayice Pearson's evidence on this matter, the circuit court did not abuse its discretion in including the $30,000 Reggie White settlement as income for 1998. If Jayice Pearson was no longer receiving payments from the Reggie White settlement, he could have cleared up any misunderstandings regarding the payments. Other than his own testimony that he was no longer receiving the payments, he offered no documentary evidence supporting his contention. The circuit court was free to believe or disbelieve any part of Jayice Pearson's testimony. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). The circuit court's relying on the income and expense statement prepared by Jayice Pearson and on Jayice Pearson's acknowledgement that he listed the $30,000 Reggie White settlement as anticipated income for 1998 was not an abuse of discretion. The circuit court merely rejected Jayice Pearson's attempts to discredit his own income and expense statement.

Jayice Pearson also contends that the circuit court erred in not attributing any income to Wendy Pearson because she would generate income from the assets awarded to her in the property division. In dividing the marital property, the circuit court awarded a portion of the Jayice Pearson revocable trust, valued at $471,192, to Wendy Pearson. Jayice Pearson claims that the circuit court should have considered any trust, interest or dividend income that Wendy Pearson would receive from the trust in determining her gross income. We agree.

■ According to the directions for completing Form m 14,[2] "gross income" includes:

1. This was a settlement obtained by certain professional football players in a lawsuit against the National Football League involving "free agency."

2. Form 14 directions that were in effect when the circuit court entered its judgment had an effective date of September 1, 1996. Although the Supreme Court revised Form 14 and its directions in 1998, the revisions did not become effective until October 1, 1998. The circuit court entered its judgment on August 24, 1998.

[I]ncome from any source ... and includes but is not limited to income from salaries, wages, overtime compensation, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, and spousal support actually received from a person not a party to the order.

The circuit court was obligated to consider all sources of income in making its determination regarding child support. It, therefore, should have considered any income that Wendy Pearson would receive from her share of the revocable trust. *See Sturgeon v. Sturgeon*, 849 S.W.2d 171, 176 (Mo.App.1993).[3]

Wendy Pearson complains that determining what the trust's benefits would be is highly speculative because "the stocks and mutual funds which make up the bulk of the investment account could generate losses almost as easily as gains[.]" The record, however, does not inform us of the nature of the investments involved or the investment return history. We have no way of determining the validity of Wendy Pearson's argument.

Recognizing this, she reasons that we should conclude that the trust will not produce income for day-to-day expenses because she had not received any income or any economic benefit from her portion of the investment account a year after the divorce. The record does not support her claim—it does not contradict it, but it does not support it. The record includes copies of demands on Jayice Pearson to comply with the court's judgments regarding the

property division, a petition filed by Wendy Pearson to institute contempt proceedings in an effort to compel the division of the marital property, and a motion to enforce the court's judgment regarding the property division. These filings and demands do not establish that she has not received or will not receive any income from the trust. Hence, we must remand to the circuit court for it to consider what income, if any, Wendy Pearson can reasonably expect to receive from the trust.

■ Jayice Pearson also contends that the circuit court erred in awarding to Wendy Pearson $1000 a month in maintenance for 24 months. Again, he asserts that the circuit court did not consider the income that Wendy Pearson would receive from the marital assets awarded to her. We agree. Although a spouse is not required to deplete or to consume his or her portion of marital assets before being entitled to maintenance—*Witt v. Witt*, 930 S.W.2d 500, 503 (Mo.App.1996)—interest income from the investment of marital property must be considered in determining the necessity for, and amount of, maintenance. *Van Natter v. Van Natter*, 988 S.W.2d 110, 113 (Mo.App.1999).

The circuit court did not consider any investment income that Wendy Pearson would receive from the trust account. After noting the trust, the circuit court merely stated that "it is not incumbent upon Petitioner to totally dissipate those funds on living expenses." The circuit court, however, did not determine whether the investments in the trust were such that Wendy Pearson could reasonably expect some amount of income from it without dissipating the investment's *corpus*. It erred in not doing so.

---

**3.** Wendy Pearson asserts that only income actually received—not potential income—should be attributed as gross income. In support of this contention, she relies on *Farr v. Cloninger*, 937 S.W.2d 760 (Mo.App.1997), in which the court held that, because the father received no immediate benefit from his employer's contribution to his retirement plan, it would not consider the contributions as income received by the father. The court said, "[The contributions] provided no positive impact on [the father's] immediate ability to pay child support." *Id.* at 764. This is not the case here. If the trust generates income, it will have a positive impact on Wendy Pearson's immediate ability to provide support for her child.

**738**

Wendy Pearson asserts that "the benefits which might spring from the marital assets are so uncertain, remote and unrealized that they have no effect upon the obligee's ability to support herself." As was the case with the child support issue, the record does not permit us to determine the validity of this argument. Hence, we reverse the circuit court's award of maintenance to Wendy Pearson and remand to the circuit court for it to consider what income, if any, Wendy Pearson can reasonably expect to receive from her portion of the revocable trust.

In his next point, Jayice Pearson contends that the circuit court erred in its division of marital assets because it did not consider his contribution of nonmarital funds to the acquisition of marital property. Jayice Pearson alleged that he deposited $150,000 of nonmarital property into an account that was opened after he married Wendy Pearson. He does not contest that the account was marital property; he merely asserts that the circuit court erred in not considering his contribution of nonmarital funds into the account.

■■■ Generally, property is nonmarital if a spouse owned it before the marriage *and retained separate title* to it after marriage. *Glenn v. Glenn*, 930 S.W.2d 519, 523 (Mo.App.1996). The owner's adding a spouse's name to the property's title creates a presumption that the property has been transmuted into marital property, and only clear and convincing evidence that the owner did not intend to convert the property will rebut the presumption. *Clark v. Clark*, 919 S.W.2d 253, 255 (Mo.App.1996). A party's intent is the determining factor. A commingling of nonmarital and marital property will not transmute nonmarital property into marital property unless the owner intended to convert the nonmarital property to marital property. See § 452.330.4, RSMo Cum.Supp.1998; *In re Marriage of Smith*, 785 S.W.2d 764, 766 (Mo.App.1990).

Jayice Pearson did not establish with clear and convincing evidence that he did not intend to transmute his nonmarital property to marital property. He concedes that the evidence established that he placed his nonmarital funds into the account and that the account was acquired after the marriage. He offered no evidence suggesting that he did not intend to convert the property into marital property. The only evidence we found on the issue was Jayice Pearson's testimony:

Q. Okay. And so, you referenced that it was approximately $150,000 that you brought into the marriage?

A. Yes.

Q. Okay. And you placed that in an account which you've continued to build up during your marriage, is that correct?

A. Correct.

■■■ Jayice Pearson relies on *Mellon v. Mellon*, 973 S.W.2d 570, 573 (Mo.App. 1998), to support his contention that the transmutation of separate property into marital property does not negate the circuit court's obligation to consider that contribution in the division of the property. The *Mellon* court said:

Transmutation of separate property into marital property does not stop the trial court from considering the premarital contributions of each spouse. Although transmutation determines the character of the property (whether it is marital or separate), it does not determine the division of the property (how much should be apportioned to each spouse).

*Id.* at 573. The *Mellon* court did not hold, as Jayice Pearson contends, that the circuit court is *obligated* to consider the premarital contributions of each spouse in making the division of property. It is one of many factors the circuit court *may* consider. *Id.* Jayice Pearson's contention is without merit.

■■■ Jayice Pearson also complains that the circuit court erred in finding that he attempted to secrete $147,834 in marital assets and in crediting him with this sum

in the property division. We disagree. The circuit court has broad discretion in making determinations on such issues because it is in the better position to judge credibility. *Heslop v. Heslop*, 967 S.W.2d 249, 255 (Mo.App.1998). When the evidence establishes that a spouse has secreted marital assets in anticipation of a divorce, the circuit court may hold that spouse liable for the squandered asset. *Id.*

■■■ Although Jayice Pearson offered various explanations for his expenditure of the funds, the circuit court obviously disbelieved them. The circuit court found that "the withdrawal of most of the $187,019 was an attempt on the part of [Jayice Pearson] to secret[e] money. Over $90,000 [was] 'loans' to family members." The circuit court did find, however, that $39,185 of the expenditures was for legitimate expenses. We defer to the circuit court's determination on credibility, and we will not second-guess the circuit court's judgment of the credibility of Jayice Pearson's testimony on this point. *Ray v. Ray*, 877 S.W.2d 648, 651 (Mo.App.1994).[4]

In his final point, Jayice Pearson asserts that the circuit court erred in awarding primary residential custody of the minor child to Wendy Pearson. He contends that the evidence established that Wendy Pearson did not provide an overall stable environment for the couple's child.

■■■ The circuit court has broad discretion in child custody matters, and we will affirm its decision unless we are firmly convinced that a child's welfare and best interests require otherwise. *Flathers v. Flathers*, 948 S.W.2d 463, 465 (Mo.App. 1997). We give greater deference to the circuit court in child custody cases than in other types of civil cases. *Id.* at 465–66. "We defer to the [circuit] court on ques-

tions of credibility of witnesses and choosing between conflicting evidence." *Couch v. Couch*, 978 S.W.2d 505, 510 (Mo.App. 1998).

■■■ Specifically, Jayice Pearson complains that the evidence established that on several occasions Wendy Pearson prevented his contact with the child, unnecessarily changed the child's residence, and made derogatory comments about Jayice Pearson in the child's presence. The circuit court, however, found:

... [Wendy Pearson] has always been the primary caretaker of the minor child and has taken care of the child's needs on a daily basis.

... [W]hile [Jayice Pearson] has become more involved in the minor child's life recently, [his] work schedule, including weekends, and working for Metro Sports, are limiting factors to [his] ability to care for the child on a full time basis.

... [Wendy Pearson] is more likely to allow [Jayice Pearson] frequent and meaningful contact with the minor child. [Jayice Pearson] has made unilateral decisions regarding day care and other activities without consulting [Wendy Pearson].

... [D]omestic violence has occurred between the parties, and the custody and visitation arrangement ordered by the [c]ourt best protects the child and each parent from any future harm.

... [T]he best interest of the minor child will be served by awarding the parties the joint legal custody of the minor child with [Wendy Pearson] awarded the primary residential custody of the minor child subject to [Jayice Pearson's] right of specific visitation.

---

4. Jayice Pearson also contends that the circuit court did not credit Wendy Pearson with $93,509 for marital funds spent by her on living expenses in the property division. He did not raise the issue in his point relied on, however. "Issues not encompassed by the point relied on and raised only in the argument portion of the brief are not preserved for review." *Lush v. Woods*, 978 S.W.2d 521, 525 (Mo.App.1998). We do not discern a proper basis for considering the matter as plain error.

Although Jayice Pearson presented evidence that contradicted the circuit court's findings, we defer to the circuit court on questions of witness credibility and its choices between conflicting evidence. The circuit court considered the relevant factors in § 452.375.2, RSMo Supp.1995, in making its determination regarding custody and the best interests of the child. We are not firmly convinced that the circuit court erred in concluding that it was in the child's best interest for custody to be awarded to Wendy Pearson.

We reverse the circuit court's judgment regarding child support and maintenance and remand for further proceedings. We affirm the circuit court's judgment regarding the division of property and custody of the minor child.

LOWENSTEIN and ULRICH, JJ., concur.