PERRY DANIEL CASKEY, Plaintiff-Appellee v. AMY JOHNSON CASKEY, Defendant-
Appellant

No. COA09-1191

(Filed 7 September 2010)

**Child Custody and Support— calculation of gross monthly income—employer's payments—Social Security and Medicare taxes—medical insurance premiums—life and disability insurance premiums—retirement and 401(K) plans**

The trial court erred in its calculation of defendant wife's gross monthly income for child support purposes. Only income to which a parent has immediate access and can choose to access without incurring a penalty can be considered for child support purposes. Thus, the trial court erred in including as income defendant's employer's payments toward her Social Security and Medicare (FICA) taxes, medical insurance premiums, life and disability insurance premiums, and her employer's contributions to her retirement and 401(k) plans. The case was remanded for a recalculation of the amount of plaintiff's child support obligation.

Appeal by Defendant from order entered 20 March 2009 by Judge N. Hunt Gwyn in District Court, Union County. Heard in the Court of Appeals 23 March 2010.

*Stepp Lehnhardt Law Group, P.C., by Donna B. Stepp, for Plaintiff-Appellee.*

*Weaver, Bennett & Bland, P.A., by Rebecca K. Watts, for Defendant-Appellant.*

McGEE, Judge.

Plaintiff and Defendant were married on 18 December 1993. Three children were born of the marriage between Plaintiff and Defendant. Plaintiff and Defendant separated on 10 February 2006. Plaintiff filed a complaint for child custody, child support, equitable distribution, and attorney's fees on 13 July 2006. Defendant answered on 5 October 2007, and included counterclaims for inequitable distribution in her favor, child custody, sequestration of the marital residence for the use and benefit of the children, child support, and attorney's fees. Plaintiff and Defendant resolved all issues except child support. The trial court held a hearing on 4 March 2009 to consider the issue of child support. The trial court entered an order on 20 March 2009,

in which it ordered Plaintiff to pay Defendant monthly child support in the amount of $234.00. Defendant appeals from the 20 March 2009 order of the trial court. Additional relevant facts will be discussed in the body of the opinion.

### Gross Monthly Income

In Defendant's first argument, she contends the trial court erred in calculating her gross monthly income for child support purposes. We agree. Defendant specifically argues the trial court should not have included as income her employer's payments toward Defendant's Social Security and Medicare (FICA) taxes, Defendant's medical insurance premiums, Defendant's life and disability insurance premiums, and her employer's contributions to Defendant's retirement and 401(k) plans.

A trial court's determination concerning child support payment

is reviewable, but it will not be disturbed in the absence of a clear abuse of discretion. In fixing the amount of . . . child support which the husband is required to pay the wife the court must consider not only the needs of the . . . children but the estate and earnings of both the husband and wife. It is a question of fairness and justice to all parties.

*Beall v. Beall*, 290 N.C. 669, 673-74, 228 S.E.2d 407, 410 (1976) (citations omitted) (emphasis added).

The trial court found the following relevant facts in its order:

7. . . . Plaintiff is currently employed by the City of Monroe as a police officer, and has an average gross monthly income of $4,353.00.

8. . . . Defendant's W2 states that. . . Defendant's gross yearly income is approximately $50,000.

9. However, . . . Defendant filed an Employer Wage Affidavit which states that . . . Defendant receives a dollar for dollar credit for additional benefits, which are treated as income, thereby making her gross yearly compensatory income $74,428.89.

10. . . . Defendant contends that the employer wage affidavit includes payment for taxes which are attributed to the employer and should not be included in her gross income.

CASKEY v. CASKEY

[206 N.C. App. 710 (2010)]

Based upon its findings of fact and conclusions of law, the trial court calculated Plaintiff's child support obligation to be $234.00 per month.

Defendant was employed by the Town of Matthews (the Town) as a police officer. Defendant's employer wage affidavit (the affidavit) listed her salary as $54,965.56. Chief of Police Rob Hunter testified that the $54,965.56 figure represented what Defendant, an hourly employee, would have earned had Defendant worked her full "assigned work schedule" for the year. Chief Hunter further testified that, because Defendant suffered from multiple sclerosis, Defendant was unable to work all the hours provided for in her assigned work schedule and, therefore, could not have received the full $54,965.56 figure indicated in the affidavit. The affidavit further showed that the Town annually paid the following on behalf of Defendant: $4,204.87 in FICA tax obligations, $7,565.22 in medical insurance premiums, $171.49 in life and accidental death and dismemberment insurance premiums, $4,023.48 in retirement plan contributions, $2,748.28 in 401(k) plan contributions, and $750.00 in longevity pay. The trial court included all of the above listed payments made by the Town as income for the purposes of calculating Defendant's gross annual income.

> The amount of a parent's child support obligation is determined by application of The North Carolina Child Support Guidelines (Guidelines). G.S. § 50-13.4(c)[.] A trial court may deviate from the Guidelines when it finds, by the greater weight of the evidence, application of the Guidelines: (1) would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support; or (2) would otherwise unjust or inappropriate. G.S. § 50-13.4(c)[.]

*Barham v. Barham,* 127 N.C. App. 20, 24, 487 S.E.2d 774, 777 (1997) (internal citations omitted). The Guidelines define gross income as "income before deductions for federal or state income taxes, Social Security or Medicare taxes, health insurance premiums, retirement contributions, or other amounts withheld from income." N.C. Child Support Guidelines, 2009 Ann. R. (N.C.) 42. The Guidelines further state:

> **(1) Gross Income.** "Income" means a parent's actual gross income from any source, including but not limited to income from employment or self-employment (salaries, wages, commissions, bonuses, dividends, severance pay, etc.), . . . retirement or pensions, interests, trusts, annuities, capital gains, social security benefits, workers compensation benefits, unemployment insur-

ance benefits, disability pay and insurance benefits, gifts, prizes and alimony or maintenance received from persons other than the parties to the instant action. When income is received on an irregular, non-recurring, or one-time basis, the court may average or pro-rate the income over a specified period of time or require an obligor to pay as child support a percentage of his or her non-recurring income that is equivalent to the percentage of his or her recurring income paid for child support.

*Id.* at 43.

(4) **Income Verification.** Child support calculations under the guidelines are based on the parents' current incomes at the time the order is entered. Income statements of the parents should be verified through documentation of both current and past income. Suitable documentation of current earnings (at least one full month) includes pay stubs, employer statements, or business receipts and expenses, if self-employed. Documentation of current income must be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period.

*Id.* Our Court recently held in *Head v. Mosier*, —— N.C. App. ——, 677 S.E.2d 191 (2009):

When determining a parent's child support obligation under the Guidelines, a court must determine each parent's gross income. 2006 Guidelines. A parent's child support obligation should be based on the parent's " 'actual income *at the time the order is made.*' " Next, the court must determine allowable deductions from a parent's gross income to get his or her adjusted gross income. 2006 Guidelines. A parent's presumptive child support obligation is based primarily on his or her adjusted gross income.

*Id.* at ——, 677 S.E.2d at 197 (internal citations omitted) (emphasis in original).

Defendant argues that the trial court erred in its calculation because it should have only included Defendant's salary and longevity pay as income for the purposes of determining Plaintiff's child support obligation. Defendant contends that the trial court also erred in including the payments the Town made toward Defendant's Social Security, Medicare, life and accidental death and dismemberment insurance, retirement, and 401(k) accounts when calculating Defendant's income.

The Guidelines do not specifically address payments an employer makes on behalf of an employee and the effect, if any, said payments might have on the employee's adjusted gross income for the purposes of child support. A review of our state's case law reveals no clear answers to this question. We, therefore, review relevant legal principles from our appellate courts, as well as opinions from other jurisdictions, for guidance.

### Retirement and Insurance Contributions

The Arizona Court of Appeals addressed these issues in *Hetherington v. Hetherington*, 202 P.3d 481 (2008), *review denied*, —— P.3d ——, 2009 Ariz. LEXIS 146 (2009). In *Hetherington*, the mother argued that the trial court had erred in failing to include the contributions made by the father's employer for the father's employment benefits. *Id.* at 486. In *Hetherington*, "gross income" for child support purposes is defined as including

> "income from any source, and may include, but is not limited to, income from salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits (subject to Section 26), worker's compensation benefits, unemployment insurance benefits, disability insurance benefits, recurring gifts, prizes, and spousal maintenance. Cash value shall be assigned to in-kind or other non-cash benefits[.]"

*Id.* (quoting Section 5(A) of the Arizona Child Support Guidelines). The Arizona Court of Appeals conducted the following analysis concerning the effect employer contributions might have on the calculation of a parent's child support obligations, highlighting whether employment benefits reduced the living expenses of the parent. This analysis begins by focusing on decisions involving employment-related expenses, and employer contributions to a parent's insurance premiums.

> Although the question whether to include employee benefits such as employer-paid health-insurance premiums and employer contributions to retirement accounts as income to the employee parent is one of first impression in Arizona, courts in other jurisdictions have considered similar issues, and most courts agree that the employment benefits that a parent receives that *reduce his living expenses* should be included as income to that parent for the purpose of determining the amount of child support. *See Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503, 514-15

(2004) (holding that benefits such as housing expenses, utilities, homeowners' insurance, other costs of home maintenance, groceries and furnishings were properly included as income to an employee parent, citing similar holdings in *Mascaro v. Mascaro*, 569 Pa. 255, 803 A.2d 1186, 1194 (2002); *Clark v. Clark*, 172 Vt. 351, 779 A.2d 42, 48-49 (2001), and *Morgan v. Ackerman*, 964 S.W.2d 865 (Mo. App. 1998)). *See also In re Marriage of Schulze*, 60 Cal. App. 4th 519, 70 Cal. Rptr.2d 488, 494-95 (1997) (holding that the use of a company car and employer-subsidized housing justified imputing the rental value of the car and the rent subsidy to the employee); *Mobley v. Mobley*, 309 S.C. 134, 420 S.E.2d 506, 509-510 (S.C. Ct. App. 1992) (holding that the car, housing and utility allowances paid by an employer were properly included in the employee parent's income). Also, the courts in some jurisdictions have held that it is appropriate to include employer-provided health-insurance coverage as income to the employee parent because it saves the parent that expense. *See Bellinger v. Bellinger*, 46 A.D.3d 1200, 847 N.Y.S.2d 783, 785 (App. Div. 2007) (holding that the trial court correctly included in the employee parent's income his "before-tax health insurance deductions" that were a "fringe benefit" provided by his employer); *Lawrence v. Delkamp*, 1998 ND 178, 584 N.W.2d 515, 518 (1998) (holding that it was not error to include as income of the employee parent the amounts that the employer paid for health-, life- an disability-insurance premiums); *Farr v. Cloninger*, 937 S.W.2d 760, 764 (Mo. Ct. App. 1997); *Chiovaro v. Tilton-Chiovaro*, 805 P.2d 575, 578, 247 Mont. 185 (1991) (holding that employer-provided health insurance is a benefit that an employee parent would have to provide and that it should, therefore, be included as income). *Cf. Widman v. Widman*, 619 So.2d 632, 634 (La. App. 1993) (holding that "gross income" does not include the insurance *premiums* paid by an employer but only the insurance *benefits*). The Alabama court held that whether to include employer-paid health-insurance *premiums* as income to the employee parent depended on whether the parent had the ability to choose between accepting additional wages in lieu of the benefit. *See Jones v. Jones*, 920 So.2d 563, 564-65 (Ala. Civ. App. 2005). When the "parent would be paid the same wages regardless of whether the parent decided to accept or to decline employer-paid health-insurance coverage . . . that is, where a parent has no power to redirect payments for such coverage[,]" the benefit should not be included as income. *Id.* (italics omitted)

*Id.* at 487.

The Arizona Court of Appeals also analyzed the effect of employer contributions to retirement accounts.

> Cases involving employer contributions to a retirement plan are not as uniform. The Missouri court held that employer contributions to an employee parent's retirement account were not income because "there was no discernable way in which these contributions would be of any assistance to Father in satisfying any child support payments." *Farr*, 937 S.W.2d at 764. The court noted that the employee parent did not have the option to receive cash in lieu of the contribution, and it concluded that this benefit therefore "provided no positive impact on [the parent's] immediate ability to pay child support." *Id.* The Colorado court similarly held that undistributed employer contributions to employee parents' pension plans did not constitute income for determining child support because the employers determined the amount of their contributions "and the employees did not have the option of directly receiving the amounts as wages." *In re Marriage of Mugge*, 66 P.3d 207, 211 (Colo. Ct. App. 2003) (citing *Campbell v. Campbell*, 635 So. 2d 44, 46 (Fla. Dist. Ct. App. 1994); *Ballard v. Davis*, 259 A.D.2d 881, 686 N.Y.S.2d 225, 229 n.3 (1999); and *Jordan v. Brackin*, 992 P.2d 1096, 1100 (Wyo. 1999)). The courts that have included employer contributions to retirement plans as income have not provided any particular rationale for including this particular benefit. *See Cozier v. Cozier*, 819 So. 2d 834, 836 (Fla. Dist. Ct. App. 2002) (holding that the trial court properly included as income to the employee parent the benefits of medical and term life insurance, a company car and the employer's contributions to an individual retirement account but that the court was required to place a dollar value on each benefit); *Lawrence*, 584 N.W.2d at 518-19 (holding that the definition of income included the employer's contributions to the employee parent's pension fund); *De Masi v. De Masi*, 530 A.2d 871, 879, 366 Pa. Super. 19 (1987) (holding that it was not error to include in the employee parent's income the amounts that the corporation paid for the parent's life-, health- and disability-insurance premiums and its contributions to the pension plan).

*Id.* at 487-88.

The Arizona Court of Appeals focused on the decisions of courts across the country seeking an "equitable outcome." The Court deter-

mined that a central consideration in the analysis should be whether the amount of employment benefits received was significant and served to reduce a parent's living expenses in such a manner as to affect the amount of child support that parent was capable of paying.

> Despite varying approaches, "courts throughout the nation have been unwavering in their attempt to reach an equitable outcome when it comes to determining a party's income for child support," *Gangwish*, 678 N.W.2d at 515, and we attempt to do the same. Thus, in interpreting the Guidelines, we seek to determine the intent of the Arizona Supreme Court based on the language and the overall purpose of the Guidelines. *Mead*, 198 Ariz. at 221 P8, 8 P.3d at 409.

> One purpose of the Guidelines as expressed in Section 1(A) is "[t]o establish a standard of support for children consistent with the reasonable needs of children and the ability of parents to pay." The receipt of employment benefits that "are significant and reduce personal living expenses" affects a parent's ability to pay child support and should be considered as income to that parent. *See* Guidelines § 5(D). For example, a parent may incur a different expense for health and/or life insurance if his employer did not pay for (a portion of) the premium. However, worker's compensation insurance is not an ordinary living expense for which a parent would otherwise have to pay. These are issues for the family court to resolve in the first instance.

> Neither is the impact on parental income of an employer's contribution to a retirement plan and to retirement long-term disability clear. For example, in this case, there was no evidence regarding whether Husband had an option to receive additional salary in lieu of his employer's ASRS contributions or whether he could determine the amount contributed. Similarly, there was no evidence regarding the retirement long-term disability benefit, and it is unknown whether this would be an ordinary living expense that Husband would otherwise incur. These also are issues for the family court to resolve in the first instance.

> One court has noted that the inclusion as income of employment benefits may obligate a parent to pay child support based on income that he does not really have available to spend. *See In re Marriage of Schlafly*, 149 Cal. App. 4th 747, 57 Cal. Rptr. 3d 274, 281 (2007). This is a valid concern that may be considered by the family court in determining the appropriate amount of child sup-

port in any case. Indeed, Section 20(A) of the Guidelines allows the court to deviate from the Guidelines amount when the application of the Guidelines would be inappropriate or unjust in the individual case, when the deviation is not contrary to the child(ren)'s best interests, and when the court makes written findings stating why it deviated and what the child-support obligation would have been with and without the deviation. Thus, in a case in which benefits artificially inflate a parent's income, the court may consider a deviation from the Guidelines.

*Id.* at 488-89. We agree with the approach adopted by the Arizona Court of Appeals which focuses on "income" to which a parent has immediate access, and "income" that a parent can choose to access without incurring a penalty. If employment benefits received by a parent reduced the living expenses that parent would have otherwise incurred, those benefits should be included as income to that parent for the purpose of determining the amount of child support. *Id.* at 487.

The Indiana Court of Appeals has also addressed the issue of employer contributions to a parent's retirement plans. In considering the ramifications of allowing *all* contributions to a retirement account to be counted as income, the Indiana Court of Appeals cautioned that allowing all such contributions to be counted as income "would require each and every retirement contribution to be included in the [child support] calculation, regardless of how the account works. The child support calculation would be based upon funds accessible, if at all, only upon paying a significant penalty." *Saalfrank v. Saalfrank,* 899 N.E.2d 671, 679-80 (Ind. Ct. App. 2008). The Indiana Court of Appeals then held:

Thus, we conclude that, in determining whether to exclude retirement contributions, in whole or in part, for purposes of calculating a child support obligation, the trial court should consider:

(1) a parent's control of whether or in what amount a retirement contribution is made;

(2) the parents' established course of conduct in retirement planning (prior to and after the dissolution);

(3) the amount of the contribution (from nominal to a large amount that could suggest the inappropriate sheltering of income);

(4) whether and to what extent there are incentives for the contribution;

(5) whether the contribution qualifies for favorable tax treatment; [and,]

. . . .

(7) any other relevant evidence.

Here, the human resources director of Father's employer sent to Mother a three-page letter detailing the terms of Father's employment. He described the Money Purchase Savings Plan ("MPSP") as follows: "Employees are automatically enrolled in the Money Purchase Savings Plan on their one (1) year anniversary, and the company contributes 6% of employee earnings, and does not require any employee contribution." The MPSP was mandatory, functioned automatically, upon a date certain, in a pre-determined and reasonable amount, and was generally applicable to the company's employees. Therefore, Mother did not establish error in the trial court's [decision not to treat] Father's contributions to the MPSP [as income for child support purposes].

*Id.* at 680 (citation omitted). We find the reasoning of the Indiana Court of Appeals compelling, and hold that the list of considerations cited above should be part of North Carolina courts' calculus when making determinations concerning a parent's income for child support purposes. We find this approach best complies with our Supreme Court's mandate that: "In fixing the amount of . . . child support . . . the court must consider not only the needs of the . . . children but the estate and earnings of both the husband and wife. It is a question of fairness and justice to *all parties.*" *Beall,* 290 N.C. at 673-74, 228 S.E.2d at 410 (citations omitted) (emphasis added).

We also find the above analysis relevant when considering employer contributions to a parent's insurance premiums. We hold that contributions made by an employer to an employee's retirement accounts, including any 401(k) accounts, and insurance premiums, may not be included as income for the purposes of the employee's child support obligations unless the trial court, after making the relevant findings, determines that the employer's contributions immediately support the employee in a way that is akin to income. We place particular relevance on a determination concerning whether the employee *may* receive an immediate benefit from the employer's contributions, such that the employee's *present* ability to pay child support is thereby enhanced. *See Head,* ⸺ N.C. App. at ⸺, 677 S.E.2d at 197 ("A parent's child support obligation should be based on the

parent's ' "actual income *at the time the order is made.*" ' ") (citation omitted). For example, if the employee could elect to receive cash instead of retirement or life insurance contributions from the employer, those employer contributions might properly be considered as income for child support purposes.

Upon review of the record, we find that a new hearing is required and we reverse and remand to the trial court for consideration of the factors discussed above. The trial court shall make the appropriate findings of fact and conclusions of law in support of its determination of these issues. Plaintiff and Defendant may present additional relevant evidence, in order for the trial court to make informed findings on these issues.

### Social Security and Medicare

It is clear from the Guidelines that benefit payments made to a parent from Social Security or Medicare are properly considered income for the purpose of calculating the parent's gross income for child support. The Guidelines do not, however, give specific guidance concerning whether payments made by an employer toward an employee's expected Social Security and Medicare benefits can be considered income.

First, in accord with the analyses we have adopted above, we hold that Social Security and Medicare taxes employers are required to make on behalf of an employee may not be considered income as applied to a parent's child support obligations. We make this holding because these payments by an employer provide a parent no immediate access to any additional funds from which they could contribute to child support. Second, the Guidelines state:

(4) Income Verification. Child support calculations under the guidelines are based on the parents' current incomes at the time the order is entered. Income statements of the parents should be verified through documentation of both current and past income. Suitable documentation of current earnings (at least one full month) includes pay stubs, employer statements, or business receipts and expenses, if self-employed. Documentation of current income must be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period. . . .

N.C. Child Support Guidelines, 2009 Ann. R. (N.C.) 43.

Neither an employee's pay stubs, nor an employee's tax returns, treat the employer's mandatory contributions to an employee's future Social Security or Medicare benefits as current income. The Guidelines state that pay stubs and tax returns constitute appropriate documentation of an employee's earnings, or income, for the purposes of calculating child support obligations. Therefore, we hold that, pursuant to the language of the Guidelines, neither employer payments made toward an employee's future Social Security benefits, nor employer payments made toward an employee's future Medicare benefits, may be considered as income for the purpose of determining child support obligations. Inclusion of these employer contributions in the case before us constituted an abuse of discretion. We therefore vacate that portion of the trial court's order that included payments by the Town toward Defendant's future FICA benefits in the trial court's calculation of the amount of Plaintiff's child support obligation. We remand to the trial court for re-calculation of the amount of Plaintiff's child support obligation in light of this holding.

Reversed and remanded in part, vacated and remanded in part.

Judges CALABRIA and GEER concur.