IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-799

Filed 1 October 2024

Mecklenburg County, No. 11CVD15696

ALEXANDER F. CRENSHAW, Plaintiff,

v.

KELLY H. CRENSHAW, Defendant.

Appeal by plaintiff and cross-appeal by defendant from order entered 6 December 2022 by Judge Christy T. Mann in District Court, Mecklenburg County. Heard in the Court of Appeals 20 February 2024.

*Plumides, Romano, & Johnson, P.C., by Richard B. Johnson, for plaintiff-appellant/cross-appellee.*

*Dozier Miller Law Group, by Robert P. Hanner, II, for defendant-appellee/cross-appellant.*

STROUD, Judge.

Plaintiff appeals from the trial court's Protective Order and order modifying child support. As Plaintiff did not properly serve the non-party appellees who obtained the Protective Order with the notice of appeal, we dismiss that part of Plaintiff's appeal. As to the Modification Order, the trial court's findings were supported by competent evidence. Defendant filed a cross-appeal from the Modification Order, and the trial court's findings challenged by Defendant were also supported by competent evidence and the trial court did not abuse its discretion in determining the minor child's reasonable needs and the effective date of modification.

Finally, Plaintiff's appeal and Defendant's cross-appeal regarding the trial court's award of attorney fees both fail as the trial court properly awarded fees based on North Carolina General Statute Section 50-13.6 and the trial court did not abuse its discretion in setting the amount of fees Plaintiff must pay. We therefore dismiss Plaintiff's appeal as to the Protective Order and affirm the trial court's Modification Order.

## I. Factual and Procedural Background

Plaintiff ("Father") and Defendant ("Mother") were married in 2001 and separated in 2011. During their marriage, they had three children: two daughters born in 2002 and one son born in 2007. In 2011, Father filed a complaint with claims for custody, child support, equitable distribution, post-separation support and alimony, and attorney fees; Mother filed an answer and counterclaims for each of the same claims. On 4 December 2012, the trial court entered an order on Child Custody, Child Support, Alimony, and Equitable Distribution ("2012 Order"). Although this extensive order addressed many issues as relevant to this appeal, the 2012 Order granted primary custody of the three children to Mother and visitation on a specific schedule to Father. Overall, Father had visitation about 134 nights each year while Mother had the remaining 231 overnights. Father's child support was calculated under the North Carolina child support guidelines, using Worksheet B for "joint or shared physical custody." Father was ordered to pay Mother monthly child support of $1,741.42 starting as of 1 October 2012; he was also ordered to pay retroactive child

support back to 1 December 2011.

On 16 January 2018, the trial court entered a Consent Order on custody and child support, resolving Mother's motions to modify both custody and child support. Mother was awarded "primary care, custody and control" of the three minor children. Father was allowed visitation "only at the discretion of" Mother. Father was ordered to continue to pay child support under the 2012 Order.

On 9 October 2020, Father filed a Motion to Modify Child Support ("Father's Motion"). Father alleged "there has been a substantial change of circumstances" justifying modification of child support as the parties' two older children had "turned 18 years old and graduated from high school."

On 14 January 2021, Mother also filed a Motion to Modify Child Support ("Mother's Motion"). Mother alleged "a substantial and material change in circumstances supporting an increase" in Father's child support obligation. Specifically, she alleged that since entry of the 2012 Order, the son's expenses and Father's income and ability to pay had all substantially increased.

On 29 January 2021, Autobell Car Wash, Inc., Howco, Inc., and CAH Holdings, LLC ("the Entities") filed an "Objection to Subpoena, Motion for A Protective Order and Motion for an Award of Expenses to Include Attorney's fees" in response to a subpoena issued by Father to "Autobell Car Wash, Inc.; Howco, Inc.; and CAH Holdings, LLC" requesting documentation of income paid to Mother for 2017, 2018, 2019, and 2020. They alleged the information requested was "in part, not relevant or

reasonably calculated to lead to discovery of admissible evidence;" the information could be obtained from Mother and the request was made "for the purpose of harassment, intimidation and to cause unnecessary expense" to the Entities who were not parties to the action; and the subpoenas subjected the Entities to "undue burden and expense," were unreasonable and oppressive, and were issued for an improper purpose, "such as to cause unreasonable expense to the [E]ntities."

On 30 June 2021, Mother filed a "Motion for Deviation from North Carolina Child Support Guidelines," alleging the existence of the parties' motions to modify child support and that "the application of guideline child support would otherwise be unjust or inappropriate" and the court should set child support under North Carolina General Statute Section 50-13.4(c).

On 18 November 2021, Father filed a Motion to Compel Mother to respond to his interrogatories and request for production of documents. He alleged Mother had objected to his requests for "corporate or partnership tax returns for any business entity in which [she has] a five percent" interest for 2017 through 2020. On 16 December 2021, Mother filed her Response to Father's Motion to Compel. She responded to the allegations of the Motion to Compel and also alleged a "second Defense" of "res Judicata," alleging that the 2012 Order made detailed findings of fact regarding the formation, operation, and ownership of the three Entities and Mother's role in each. Specifically, the 2012 Order found that CAH Holdings, LLC was formed as part of Mother's father's estate plan for the benefit of his three children, including

Mother; its purpose was to "acquire and develop car wash sites to rent to Autobell Car Wash, Inc." "Mother ha[d] absolutely nothing to do with the management and operation of CAH Holdings, LLC." She received only a K-1 each year from CAH Holdings, LLC. The 2012 Order also found "Mother is employed on a part-time basis with Autobell Car Wash, Inc. in their marketing department. [She] is not an officer of the company nor is she involved in any day to day management decisions" but "[t]hese decisions are made by her father, Charles A. Howard, II." Howco, Inc. was formed by Mother's grandfather and father and it "sold automated car wash machinery to other car wash companies." Mother alleged she had provided her personal income tax returns and K-1 forms from Autobell Carwash, Inc. to Father but she did not have access to the "corporate tax returns" of CAH Holdings, LLC and Autobell Car Wash, Inc. She alleged these findings regarding her "ownership interest and status" with CAH Holdings, LLC and Autobell Car Wash, Inc. were already established and alleged res judicata as an affirmative defense to Father's discovery requests and Motion to Compel. She also requested issuance of a protective order and an award of attorney fees.

Also on 16 December 2021, Autobell Car Wash, Inc. and CAH Holdings, LLC filed an "Objection to Subpoena, Motion for Protective Order and Motion for Award of Expenses to include Attorney's Fees." They alleged Father had issued subpoenas to them for "any and all corporate tax returns of those [E]ntities for 2017, 2018, 2019, and 2020[.]" They alleged the subpoenas were issued to Charles H. Howard, III and

"if such a person exists, he is not an owner, stockholder or employee of" either entity. In addition, they alleged the 2012 Order had already established Mother's role in the Entities and that she had already provided her tax information to Father.

On 30 December 2021, Father filed a Motion to Compel Autobell Car Wash, Inc. and CAH Holdings, LLC to provide the subpoenaed documents. He alleged that he had received Mother's income tax returns and K-1s for 2017-2020. In 2019, "her adjusted gross income was approximately $869,000.00, of which $671,157.00 was K-1 income." Her income for 2020 had dropped almost $700,000.00 from 2019 to 2020. He alleged Mother "is a 37% owner of Autobell Car Wash Inc., and a 33% owner of CAH Holdings, LLC and the corporate returns are relevant to her income."

On 31 January 2022, the trial court held a hearing on Father's Motions to Compel discovery from Mother and subpoenaed documents from Autobell Car Wash Inc. and CAH Holdings, LLC as well as Mother's and the Entities' motions for protective orders and attorney fees opposing the production of corporate tax returns for 2017, 2018, 2019, and 2020. On 22 February 2022, the trial court entered an Order denying Father's motion to compel; allowing Mother's motion for protective order; and holding open motions for attorney fees filed by Mother, Autobell Car Wash Inc., and CAH Holdings, LLC. The trial court noted its findings in the 2012 Order which found Mother had an ownership interest in the Entities but she "has absolutely nothing to do with the management" of CAH Holdings, LLC and was "employed on a part-time basis with Autobell[.]" The trial court also found that "the court made

detailed findings in the Order entered on December 4, 2012 so that the issue would not come up again and require relitigating." Thus, the trial court found the "requested tax returns are not relevant to child support" based on the prior litigation of "Mother's income and involvement" in the Entities. The trial court concluded that Father "is collateral[ly] estopped from requesting these documents for the purpose of relitigating child support."

On 25 April 2022, Father served a notice of deposition on Mother to be held on 11 May 2022. On 2 May 2022, Mother filed an "Objection to the Deposition of [Mother] as well as any other discovery in this action and Motion for Protective Order." She alleged Father had already done "extensive discovery" including one set of interrogatories, one request for production of documents, and "numerous [s]ubpoenas to [her] employer as well as other individuals related to [Mother's] employment with a family business." She alleged she had already produced "extensive discovery" to Father including "tax returns, bank records, and literally hundreds of documents relating to her income, expenses and needs of support for the" remaining child of the parties. She also alleged Father "has stated on prior occasions that one of his goals in his persistent and relentless litigation is to cause financial hardship to [Mother] and the expenditure of unreasonable sums" by her and her family to defend the litigation. She requested a protective order to prevent further discovery, including the deposition.

On 6 May 2022, Father filed a "Reply and Motion to Compel" in response to

Mother's Objection to her deposition. He alleged that "this is a non-guideline child support matter" and a deposition would not be unreasonable or burdensome and would lead to discoverable information. He also noted that Mother's discovery responses "are now over one year old and need to be supplemented."

On 9 May 2022, Father served a second request for production of documents. Mother obtained an enlargement of time to respond to 8 July 2022. Mother also served a second request for production of documents on Father on 11 May 2022, and he obtained an enlargement of time to respond to 11 July 2022.

On 18 July 2022, the trial court held a hearing on Father's motion to compel Mother's deposition. On 30 September 2022, the trial court entered an order allowing Father's motion. On 29 September 2022, Mother also noticed a deposition of Father for 11 October 2022. On the same date, Father noticed a deposition of Mother for 11 October 2022.

On 3 November 2022, the trial court held a hearing on both Father's and Mother's motions to modify child support. The trial court's Modification Order was entered on 6 December 2022. The trial court incorporated its findings from the 2012 Order regarding Mother's interests in the three Entities. It also found that these findings "remain unchanged . . . except for the fact that all [E]ntities are now consolidated under one parent company." The Modification Order noted the facts regarding income, custodial time, and child support at the time of the 2012 Order. The Modification Order then included detailed findings regarding Mother's income;

Mother's and the child's monthly expenses; Father's income and expenses; the estates of the parties; the parties' standards of living; Mother's homemaker contributions, particularly addressing her care of the remaining minor child since the parties' separation; changes in circumstances; child support calculations; child support arrearages; Mother's request for attorney fees; and expert witness fees. Ultimately, the trial court denied Father's motion to decrease child support and ordered Father to pay child support of $2,230.00 per month effective as of 1 January 2022. The trial court also ordered Father to pay Mother's attorney fees in the sum of $15,000.00. On 28 December 2022, Father filed a notice of appeal from the 22 February 2022 Protective Order and the 6 December 2022 Modification Order. On 5 January 2023, Mother filed notice of cross-appeal from the Modification Order only.

## II. Father's Appeal of Protective Order

We will first address Father's appeal of the Protective Order. Mother notes that Father's notice of appeal of both orders, including the February 2022 Protective Order, was served only upon Mother's counsel; there is no indication it was served upon the Entities or their counsel. The Entities have not appeared in this case on appeal. We must therefore consider whether we have jurisdiction to consider Father's appeal as to the Protective Order.

Rule 3(e) of the North Carolina Rules of Appellate Procedure states "[s]ervice of copies of the notice of appeal may be made as provided in Rule 26." N.C. R. App. P. 3(e). Further, Rule 26(b) states "[c]opies of all items filed by any party shall, at or

before the time of filing, be served on all other parties to the appeal." N.C. R. App. P. 26(b). Rule 26 also provides requirements on the manner and proof of service in detail. *See* N.C. R. App. P. 26(c)-(d). Our Supreme Court has recognized "failure to serve the notice of appeal was a defect in the record analogous to failure to serve process" but "a party upon whom service of notice of appeal is required may waive the failure of service by not raising the issue by motion or otherwise and by participating without objection in the appeal[.]" *Hale v. Afro-American Arts Intern., Inc.*, 335 N.C. 231, 232, 436 S.E.2d 588, 589 (1993).

There is no indication in the record that Father served his notice of appeal of the Protective Order on counsel for the Entities[1], and the Entities have not participated in this appeal in any way. Although the Entities were not parties to the child support case between Mother and Father, they are non-party appellees as to the Protective Order.

The Protective Order on appeal was entered in response to two Objections to Subpoena, Motion for Protective Order and Motion for an award of Expenses to include Attorney's fees. The motions for Protective Order were based on Rule 45(c)(3) of the North Carolina Rules of Civil Procedure. The first was filed by counsel for Autobell Car Wash, Inc., Howco, Inc., and CAH Holdings, LLC on 29 January 2021 in response to a subpoena issued on 15 January 2021. The second was filed by counsel

---

[1] There is also no indication in the record that the Protective Order itself was served on counsel for the Entities.

for Autobell Car Wash, Inc. and CAH Holdings, LLC on 16 December 2021 in response to subpoenas issued on 8 and 14 December 2021. On 30 December 2021, Father filed a Motion to Compel a response by all three Entities and a notice of hearing upon the Motion to Compel; he served this Motion to Compel and Notice of Hearing for 31 January 2022 only upon counsel for the three Entities, not on Mother's counsel. Mother's counsel then set a hearing on her Motion for Protective Order on the same date. The competing Motions for Protective Order and Motion to Compel were all heard on 31 January 2022, with counsel for Mother, Father, and the three Entities all appearing. The trial court issued the Protective Order on 22 February 2022.

Rule 45(c) of the North Carolina Rules of Civil Procedure is entitled "Protection of Persons Subject to Subpoena," and this title is an accurate description of the rule. N.C. Gen. Stat. § 1A-1, Rule 45 (2023). This rule sets out the procedure for a non-party who has been subpoenaed to seek protection from the court if they believe there is a legal basis for objection to the subpoena. *See* N.C. Gen. Stat. § 1A-1, Rule 45(c)(3) ("Written objection to subpoenas."). Although Mother owns a substantial interest in CAH Holdings, LLC and a very small interest in Autobell Car Wash, Inc.,[2] there is no dispute that the Entities are separate legal entities from Mother. *See Geoghagan v. Geoghagan*, 254 N.C. App. 247, 250, 803 S.E.2d 172, 175 (2017) ("We recognize that

---

[2] At the time of the hearing, the evidence indicated that in 2021, Autobell Holdings, Inc. was created as "a successor to Autobell Car Wash, Inc." as a "legal entity holding company put in place on top of Autobell Car Wash, Inc."

BBPI is wholly owned by Plaintiff and Defendant, and the subsidiary LLCs are, in turn, owned by BBPI. However, a corporation, even one closely held, is recognized as a separate legal entity even when its members are engaged in litigation which is personal in nature. And as with a corporation, our courts are not free, for the sake of convenience, to completely ignore the existence of a legal entity, such as an LLC." (citations, quotation marks, ellipses, and brackets omitted)). Had the trial court denied the Motion for Protective Order to the Entities, they would have had a right to appeal that order, whether immediately based on the demonstration of a substantial right or after entry of the Modification Order. *See* N.C. Gen. Stat. § 7A-27(b) (2023) ("[A]ppeal lies of right directly to the Court of Appeals in any of the following cases: . . . (2) From any final judgment of a district court in a civil action. (3) From any interlocutory order or judgment of a superior court or district court in a civil action or proceeding that does any of the following: a. Affects a substantial right."). And if this Court were to reverse the Protective Order, our action would directly affect the interests of the Entities, not of Mother. The Entities are non-party appellees as to the appeal of the Protective Order only.

It is well-established that the notice of appeal must be served upon the parties to an appeal. As discussed above, filing of the notice of appeal is jurisdictional, but service of the notice of appeal on an appellee can be waived if an appellee participates "without objection in the appeal." *Hale*, 335 N.C. at 232, 436 S.E.2d at 589 ("The basis for the dismissal was that while the record on appeal contained the proper

notice of appeal, nothing in the notice shows that plaintiff was given notice of the appeal through service as required by Appellate Rule 26(b). The majority concluded that this was a jurisdictional defect which both the parties and the court were powerless to remedy. Judge Wynn, dissenting, concluded that failure to serve the notice of appeal was a defect in the record analogous to failure to serve process. Therefore, a party upon whom service of notice of appeal is required may waive the failure of service by not raising the issue by motion or otherwise and by participating without objection in the appeal, as did the plaintiff here. Judge Wynn concluded that plaintiff had thereby waived service of the notice of appeal and that the Court of Appeals had jurisdiction of the appeal and should consider the case on its merits. For the reasons given in Judge Wynn's dissenting opinion, we reverse the decision of the Court of Appeals dismissing defendants' appeal and remand the case to that court for consideration on the merits." (citations, quotation marks, ellipses, and brackets omitted)).

Here, the Protective Order on appeal was entered upon the request of and for the protection of the Entities and the order addresses only their rights. They are non-party appellees as to the Protective Order but the notice of appeal of the Protective Order was not served upon their counsel, nor have any of the documents in this appeal been served upon their counsel. They have not appeared in this appeal, so they have not waived the right to be served with the notice of appeal. *See id.*

We are well aware that Mother was represented by Robert P. Hanner II before

the trial court, and the Entities were represented by David M. McCleary, and these attorneys were in the same law firm. But Mother and the Entities each were represented by separate counsel; the fact they were in the same law firm does not change our analysis. Nor can we disregard the legal status of the Entities and the requirement for notice of the appeal and the opportunity to participate by filing a brief to respond to Father's appeal. Mother's appellee brief on the Protective Order addresses primarily her own arguments, as she also filed a response to Father's motion to compel and raised her own issues in her own motions, but she does not purport to address the legal arguments the Entities may well have raised if they had participated in this appeal. Although some of those arguments are apparent to us, we cannot address them *sua sponte* without proper notice to the Entities, the parties affected by the Protective Order. We must therefore dismiss Father's appeal as to the Protective Order only as we do not have jurisdiction to consider this appeal where the non-party appellees directly affected by the Protective Order were not served and there is no indication they had notice of this appeal. However, Father's appeal as to the Modification Order was properly served upon Mother, and we have appellate jurisdiction to consider both the appeal and cross-appeal of that order.

## III. Determination of Mother's Gross Income

Father next contends the trial court erred "in determining [Mother's] gross income for child support and when it increased child support." Father has conflated several arguments, so we will attempt to address each one. First, he contends that

twelve findings of fact are not supported by competent evidence. Most of the challenged findings address Mother's income and a few address expenses and the child support calculation:

> 15. Defendant/Mother's affidavit and her testimony at trial was that she had combined gross wages and salaries from Autobell Car Wash, Inc. and HOWCO, Inc. of $6,971.00 per month and expected a bonus of approximately $20,000.00 for the current year or $1,666.67 per month for a combined monthly gross income of $8,637.67.
>
> 16. After deducting monthly amounts of federal income taxes of $911.59; state income taxes of $182.00; social security (FICA) of $611.74; Medicare of $143.07; medical insurance of $292.06; and life insurance of $369.79, her net monthly income from wages is $6,127.44.
>
> 17. Defendant/Mother's 2020 tax return was introduced into evidence and shows total income of $177,993.00 and taxable income of $139,089.00.
>
> . . . .
>
> 19. Mr. Truitt testified that the W-2 wages reported on Defendant/Mother's 2020 tax return consisted of her salary from Autobell Car Wash, Inc. and HOWCO, Inc., as testified by Defendant/Mother, plus additional sums that were advanced to or on her behalf by Autobell Car Wash, Inc. consisting of country club expenses at Carmel Country Club, Charlotte, North Carolina; personal expenses relating to the automobile operated by Defendant/Mother; and medical insurance benefits.
>
> 20. Defendant/Mother did not include this additional income on her Affidavit of Financial Standing but on the other side of the coin, did not claim those expense[s] on her Affidavit of Financial Standing.
>
> 21. Defendant/Mother's 2021 tax return was also introduced into evidence and shows total income of

$243,846.00.

22. Accountant Chris Truitt also testified that the W-2 wages reported on Defendant/Mother's 2021 tax return consisted of her salary from Autobell Car Wash, Inc. and HOWCO, Inc., as testified by Defendant/Mother, plus additional sums advanced to or on her behalf by Autobell Car Wash, Inc. consisting of country club expenses; personal expenses related to the automobile operated by the Defendant/Mother; and medical insurance benefits.

23. Defendant/Mother did not include this additional income on her Affidavit of Financial Standing but on the other side of the coin, did not claim those expenses on her Affidavit of Financial Standing.

24. The total income figure of $243,846.00 also includes positive capital gains of $173,348.00 and negative passthrough income of $172,475.00. For purposes of calculating ongoing child support, the Court finds that Defendant/Mother's annual income is $243,846.00 per annum or $20,320.00 per month.

. . . .

27. Mr. Parris contributes the sum of $2,000.00 per month toward the expenses related to the residence, which Defendant/Mother has subtracted from the shared family expenses, leaving a total of $6,867.90 per month, which is attributed one-half to her and one-half to the minor child [Sam]. The Court finds that this results in a shared family expense of $8,867.90 - $2,000.00 = $6,867.90 pro rated $3,433.95 to Defendant/Mother and $3,433.95 to the minor child [Sam].

. . . .

31. Defendant/Mother acknowledges that she has insufficient monthly income to meet all of the expenses set forth in her Affidavit of Financial Standing and that she receives, from time to time, some financial assistance from her parents to meet her and her son's monthly needs and

expenses.

. . . .

59. The Court calculates child support for purposes of this Order as follows:

> Plaintiff/Father's total gross income: $18,475.00/month
>
> Defendant/Mother's total gross income: $20,320.00/month
>
> Total combined income: $38,795.00/month
>
> Plaintiff/Father's percentage share of total income: $18,475.00 ÷ $38,795.00 = 48%
>
> Defendant/Mother's percentage share of total income: $20,320.00 ÷ $38,795.00 = 52%
>
> Plaintiff/Father's ongoing child support obligation: .48% x reasonable needs and expenses of the minor child of $4,646.00 = $2,230.00 per month

. . . .

65. Defendant/Mother filed her Motion requesting an increase in Plaintiff/Father's child support obligation on or about January 14, 2021. This Order increases the Plaintiff/Father's obligation to provide child support for the remaining minor child by the sum of $488.58. Typically, the increase in child support would be retroactive to the filing of this Motion on January 14, 2021, but as a compromise, the Court will order the increase in child support of $488.58 retroactive to January 1, 2022.

Father does not make any specific argument as to some of the challenged findings of fact but has merely listed them in his brief. Thus, these findings are binding upon this Court. *See In re K.H.*, 281 N.C. App. 259, 266, 867 S.E.2d 757, 762

(2022) ("Unchallenged findings of fact are deemed supported by the evidence and are binding on appeal." (citation omitted)).

Father's argument addresses primarily the findings regarding Mother's income in Findings No. 19 through 24. Father contends these findings are not supported by the evidence and that the trial court "abused its discretion when it failed to include numerous bank deposits into [Mother's] bank accounts that were over and above her regular W-2 income." He contends Mother was paid substantial amounts from her family or the Entities which she described as either gifts or loans from her family, but these amounts were not reflected in her W-2 income and the trial court failed to consider these regular payments as part of Mother's income for purposes of child support.

Mother admitted she received substantial assistance from her family and the evidence she received funds substantially in excess of her W-2 income was unrefuted. For example, in 2018, her father gave her a "personal loan" for $383,000.00 for a down payment on the purchase of her residence, although there was no promissory note for the loan. She still had not sold her former residence when she purchased the new home, so her parents paid the mortgage on her former residence for about six months, until it was sold. Her father paid for half of the cost to purchase a new 2023 Honda HRV for Sam, and she paid half.

Using Mother's bank records, Father presented evidence that Mother deposited about $400,000.00 into her bank account in 2021, although only $62,247.64

of this amount was her net income from her paychecks from Autobell Car Wash, Inc. and Howco Inc. as shown by her W-2 forms. Mother paid out about $377,000.00 from her bank accounts through September 2022, and counsel asked Mother about this number. Mother testified the excess deposits in her bank accounts did not come from her family, although she acknowledged her family "help[ed] out" with her expenses, "[b]ought clothes for the kids. I mean, all kinds of stuff." Mother stated "[a]nd there's a lot of times that I can't afford a lot of things that I have to pay for, so[.]" The trial court noted Mother had mentioned the college tuition for the two older children, and clarified, "I'm talking about [Sam]." Mother explained that she was paying tuition for the older children, so "I'm paying that, so that takes away the money that I have at home. So, yeah, there is a – there's a deficit there. It's expensive. So, yeah, they do pay for whenever I need to[.]" Mother testified she did not know an average amount her family paid for her or Sam's expenses, and they did not give her cash, but

> they would pay something for me like a bill, or buy something that he needs or buy something that -- for me, that I need. Like a -- the girls need a new MacBook, so. One of them is breaking, so they were going to buy the new MacBook. Things like that.

She did not know if this happened monthly, but testified that "[s]ure, I mean, things come up every month." But she testified that none of the deposits in her bank accounts came from her family.

In addition to assistance from her family, the evidence shows the Entities paid various expenses for Mother. Mother acknowledged in her testimony that the

Entities paid for her personal car expenses, including the car, gas, maintenance, inspection "and all those things"; her personal use of the airplane; attorney fees; nanny expenses; and country club expenses. Mother stated she did not include these expenses on her Affidavit of Financial Standing. Although Sam was 15 years old at the time of the hearing, the Entities still paid about $27,000.00 per year to her nanny to stay with him when she was working or out of town overnight. For 2021, these payments from the Entities for Mother's expenses totaled $233,149.00. Mother testified that these payments by the Entities were treated as income to her and she had to pay taxes on these amounts. However, Mother also testified that she got regular distributions from the Entities to pay taxes. These distributions were not necessarily the amount of Mother's taxes, but since she and her two siblings had an equal interest in the Entities, the amount would be based upon the highest tax liability of the three of them. Thus, she may get a greater amount than actually needed for her own taxes or it may be equal to her taxes. In general, Mother made substantially larger deposits to her bank accounts than the amounts she received based upon her income tax returns or paychecks. Although she testified her current husband paid her $2,000.00 per month for fixed household expenses, the evidence tended to show she received far more than this from the Entities or her family.

But despite this evidence of Mother's receipt of various types of income, gifts, or other financial assistance from various sources, Father has failed to demonstrate the trial court did not consider these payments in determining Mother's income. The

findings instead demonstrate the trial court considered these factors. Findings Nos. 19 and 21 address the evidence of payment of country club expenses, personal expenses for her automobile, and medical insurance benefits. Finding No. 31 notes that Mother "acknowledges that . . . she receives, from time to time, some financial assistance from her parents to meet her and her son's monthly needs and expenses."

We review findings of fact only to determine if they are supported by competent evidence. *See Midgett v. Midgett*, 199 N.C. App. 202, 206, 680 S.E.2d 876, 879 (2009) ("This Court's review of a trial court's findings of fact is limited to whether there is competent evidence to support the findings of fact, despite the fact that different inferences may be drawn from the evidence." (citation and quotation marks omitted)). "The trial court, as the fact finder, is the sole judge of the credibility and weight to be given to the evidence, and it is not the role of the appellate court to substitute its judgment for that of the trial court." *In re H.B.*, 384 N.C. 484, 492-93, 886 S.E.2d 106, 112-13 (2023) (citations and quotation marks omitted). Even if the evidence could support different or additional findings, under this standard of review, we cannot "second-guess the trial court's credibility determination[.]" *In re A.B.C.*, 374 N.C. 752, 761, 844 S.E.2d 902, 909 (2020) (citations omitted). The trial court's findings regarding Mother's income are supported by the evidence.

## IV. Date of Modification of Child Support

We will next address Mother's first issue on her cross-appeal of the Modification Order: "Did the trial court err when it ordered [Father] to pay child

support retroactive to 1 January 2022, instead of to the date either party filed their Motion to Modify Child Support?"

Father's Motion was filed on 9 October 2020, based on the fact that two of the parties' three children had attained the age of 18 and graduated from high school. According to North Carolina General Statute Section 50-13.4(c), Father's obligation to pay child support as to the two older children had terminated. *See* N.C. Gen. Stat. § 50-13.4(c) (2023). But despite this provision, Father properly filed a motion to modify child support based upon the two older children attaining age 18, since he would have been required to continue to pay child support as ordered in 2012 without a modification since he still had the obligation to pay support for one child. In *Craig v. Craig*, this Court addressed this situation:

> Child support obligations ordered by a court terminate upon the child reaching age eighteen, unless the child is otherwise emancipated prior to reaching age eighteen or the trial court in its discretion continues to enforce the payment obligation after the child reaches age eighteen and while the child is in primary or secondary school. N.C.G.S. § 50-13.4(c) (1987). However, when one of two or more minor children for whom support is ordered reaches age eighteen, and when the support ordered to be paid is not allocated as to each individual child, the supporting parent has no authority to unilaterally modify the amount of the child support payment. The supporting parent must apply to the trial court for modification. N.C.G.S. § 50-13.7(a) (1987) (support for minor child may be modified or vacated at any time upon motion in the cause and a showing of changed circumstances.). *See Brower v. Brower*, 75 N.C.App. 425, 433, 331 S.E.2d 170, 176 (1985) (husband had no authority to unilaterally reduce support payments where one of two children, for whom support was ordered

> without allocation by child, reached age eighteen). Thus, until such an application for modification is made by the supporting parent, and as long as at least one child for whom the support was ordered remains a minor, the full amount of the support obligation not allocated by child remains enforceable and continues to accrue and vest as it becomes due.

103 N.C. App. 615, 618-19, 406 S.E.2d 656, 658 (1991) (quotation marks and ellipses omitted).

Mother's Motion was filed on 14 January 2021. She alleged that the child's expenses and needs had substantially increased since 2012 and Father's income had increased. Mother's Motion was based upon a substantial change of circumstances. *See Johnston Cnty. ex rel. Bugge v. Bugge*, 218 N.C. App. 438, 440-41, 722 S.E.2d 512, 514 (2012) ("Pursuant to N.C. Gen.Stat. § 50-13.7(a) (2011), a trial court is authorized to modify a child support order at any time upon a motion in the cause by an interested party and a showing of changed circumstances. Modification of an order requires a two-step process. First, a court must determine whether there has been a substantial change in circumstances since the date the existing child support order was entered. The trial court only moves to the second step if the court finds there has been a substantial change in circumstances." (citation and quotation marks omitted)).

The effective date of a modification of child support may be limited by North Carolina General Statute Section 50-13.10:

> (a) Each past due child support payment is vested when it

accrues and may not thereafter be vacated, reduced, or otherwise modified in any way for any reason, in this State or any other state, except that a child support obligation may be modified as otherwise provided by law, and a vested past due payment is to that extent subject to divestment, if, but only if, a written motion is filed, and due notice is given to all parties either:

(1) Before the payment is due[.]

N.C. Gen. Stat. § 50-13.10(a)(1) (2023).

Father's Motion was properly filed immediately upon the two older children attaining age 18 and graduating from high school, so his child support obligation after filing of the motion was subject to retroactive modification back to the date of the motion. Here, the earliest possible date of modification was 1 November 2020.

Child support cannot generally be retroactively increased back to a date before the filing of a motion to increase child support, but this case does not deal with a "retroactive" modification. A retroactive modification is a change to an obligation made effective even before any motion to modify has been filed. *See Hill v. Hill*, 335 N.C. 140, 143-44, 435 S.E.2d 766, 768 (1993) ("Orders which modify alimony or support payments effective as of the date of the petition or subsequent thereto but prior to the date of the order of modification are not subject to the criticism that they have retroactive effect which destroys vested rights. This is true because the modification and the whole proceeding in which it is made are referable to the date of the filing of the petition and any change effective as of that date cannot be said to be retroactive." (citations omitted)).

Thus, the range of potential modification was set by the parties' motions. The earliest potential date of modification was therefore 1 November 2020, based upon Father's Motion.[3] His obligation could clearly be *decreased* effective 1 November 2020 based on his motion, but it is not clear it could be *increased* retroactively back to 1 November, since no motion to increase had been filed and his motion was based on two of the three children attaining age 18. The relevant date for an increase in child support is 14 January 2021, based on Mother's Motion. Certainly by the filing of Mother's Motion, there was a legal basis to modify child support effective on that date, either by an increase or decrease.

The trial court did not use either of those dates but instead made the modification effective as of 1 January 2022. The trial court made this finding as to the date of the modification:

> 65. Defendant/Mother filed her Motion requesting an increase in Plaintiff/Father's child support obligation on or about January 14, 2021. This Order increases the Plaintiff/Father's obligation to provide child support for the remaining minor child by the sum of $488.58. Typically, the increase in child support would be retroactive to the filing of this Motion on January 14, 2021, but as a compromise, the Court will order the increase in child support of $488.58 retroactive to January 1, 2022.

We review the trial court's ruling as to the effective date of the modification for an abuse of discretion. *See Barham v. Barham*, 127 N.C. App. 20, 30, 487 S.E.2d 774,

---

[3] The older children's 18th birthday was in October so his 1 October payment would have been the last child support payment due for those children.

780-81 (1997), *aff'd*, 347 N.C. 570, 494 S.E.2d 763 (1998) ("Defendant next contends the trial court erred by failing to make its increase in child support effective as of the date of her motion filed on 15 July 1994. We disagree. Although a trial court has the discretion to modify a child support order as of the date the petition to modify is filed, it is not required to do so. The trial court did not abuse its discretion by not making its order modifying child support effective as of the date of defendant's motion." (citations and quotation marks omitted)).

> Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law.

*Ferguson v. Ferguson*, 238 N.C. App. 257, 260, 768 S.E.2d 30, 33 (2014) (citations omitted).

Mother contends the trial court's decision to make the modification effective on 1 January 2022 was unreasonable because it had "already modified the amount to be lower than [Mother] had requested, so making it effective later than it could have been prejudiced [Mother] even more; the decision was certainly not a 'compromise' that 'split the difference.'" But the fact that a decision is more or less favorable to one party or the other is not the standard for an abuse of discretion.

Mother focuses on the trial court's statements during rendition of the

Modification Order to argue that the date was "random" and thus she claims it was "unsupported by reason." After discussing the decision to deviate from the child support guidelines and the amount of child support set, the trial court then addressed the effective date:

> THE COURT: Can I pick a -- can I pick a different date for it to be effective? Can I -- I know I can pick November 1, 2020. Can I pick -- and I can pick January -- or February 1, 2021, I can do that.
>
> FATHER'S COUNSEL: I think it's your discretion ---
>
> THE COURT: Can I pick any other -- like a random time?
>
> FATHER'S COUNSEL: I believe it's your discretion. ---
>
> THE COURT: I was kind of thinking that I would set it at the $2,230 a month and make it effective January 1st of this year, sort of splitting the difference on that. Do you all want me to remind you how I got to $2,230?

Although the trial court used the word "random," the selection of the effective date was not arbitrary or unsupported by reason in the context of this complex child support case. As the trial court noted during the rendition, this was an unusual child support case in many ways, and she considered these factors in deciding to deviate from the child support guidelines and in setting the child support obligation. Father had been paying child support at a lower amount based on a shared custody arrangement established in 2012 but the custodial arrangement had changed with Mother having full custody and Father spending minimal time with the children as of 2018. The trial court noted Father's Motion was filed just a few days after the two

older children turned 18 and Mother's Motion was filed later, demonstrating to this Court the trial court understood the relevance of the dates of each motion to modify. The trial court addressed the changes in income over the years, particularly as to Mother's income, noting "some anomalies based on the sort of unique business structure that they have," as well as the "worldwide pandemic and slowdown" resulting in people not washing their cars because they weren't driving their cars.

The trial court's use of the word "compromise" in Finding No. 65 does not demonstrate that the selection of the date was unreasonable or arbitrary. Mother argues the trial court should have extended the increase in support one or two years further back, depending on which motion date is used. Father asked to reduce child support for the entire time. The date selected by the trial court meant that Father's Motion as of 1 November 2020 was effectively denied, as he continued to have the obligation to pay the same amount as set in the 2012 Order until 1 January 2022. Mother's Motion was allowed but the effective date was later than she asked. The date selected by the trial court could be described as a "compromise," but it is a reasonable compromise within the discretion of the trial court considering the competing motions and the circumstances of this case. Mother has not shown the trial court abused its discretion in the selection of the effective date for the child support modification.

## V.    Reasonable Needs of the Child

Mother contends the trial court abused its discretion by relying on Father's

evidence as to the reasonable needs of the child instead of relying on her evidence. Mother claims that since she cares for Sam most of the time and Father has had far less interaction with Sam in recent years, her evidence as to his reasonable needs and expenses is more reliable. Notably, Mother does not challenge any of the trial court's findings of fact as unsupported by the evidence; she contends only that the trial court should have made different findings based upon her evidence instead of Father's evidence. She argues that the trial court did not make any findings about why it relied more upon Father's evidence than upon her evidence. In other words, as to the reasonable needs of the child, Mother makes the same argument Father made as to Mother's income: my evidence was better and the trial court should have relied on it.

Mother argues the trial court should have given more weight to her evidence and considered her more credible on the facts regarding Sam's needs and expenses. But it is well-established that the trial court is the sole judge of the weight and credibility of the evidence. *See In re H.B.*, 384 N.C. at 492-93, 886 S.E.2d at 112-13. The trial court could have relied upon Mother's evidence regarding Sam's expenses, and upon Father's evidence regarding Mother's income, in which case Mother's income would have been substantially higher than the trial court actually found and Father's child support would likely be lower. Or the trial court could have found all of one party's evidence to be credible and rejected all the other party's evidence. All those approaches are within the trial court's discretion and the fact that the trial court's findings result in a lower (or higher) child support amount than one party

requested does not render the trial court's findings an abuse of discretion. Here, it appears the trial court may have relied on Father's evidence as a better basis to determine Sam's reasonable needs and expenses because Mother's lifestyle was so dramatically beyond the ability of most people to sustain; indeed, Mother could not sustain it herself without substantial assistance from her family. The trial court acted well within its discretion in making its findings regarding Sam's reasonable needs.

## VI.  Attorney Fees

Father's appeal and Mother's cross-appeal both address the trial court's award of $15,000.00 in attorney fees to Mother. Father argues that the trial court erred in awarding fees because he did not have notice that the trial court would be addressing this issue and because it did not make the findings of fact required to award attorney fees under North Carolina General Statute Section 50-13.6; Mother argues the trial court abused its discretion by awarding less than half of the attorney fees she sought to recover.

The trial court awarded Mother $15,000.00 in attorney fees related to the modification of child support. She requested $38,414.50 including $36,687.50 in fees and $1,727.00 in costs. We will first address Father's argument as to notice. Mother's Motion filed on 14 January 2021 included a request for an award of attorney fees. This motion was properly noticed for hearing. Mother presented evidence regarding her attorney fees at the hearing; Father did not raise any objection based upon a lack

of notice of a hearing on this claim. Father's argument as to notice is without merit. *See Thomas v. Burgett*, 265 N.C. App. 364, 380-81, 852 S.E.2d 353, 364-65 (2019) ("This case is readily distinguishable from *Allen* in that Mr. Burgett had adequate notice and frequent opportunities to address the trial court regarding Ms. Thomas' legal expenses. Throughout the litigation, Mr. Burgett and his attorney were notified by Ms. Thomas and the trial court regarding the issue of attorney's fees. Mr. Burgett chose not to object to Ms. Thomas' motion for attorney's fees during the July hearing. Mr. Burgett did not notify the trial court or Ms. Thomas' attorney of any objection to the amended affidavit filed and served at the trial court's request. Mr. Burgett argues that he had no opportunity to be heard after the requested amount was amended by Ms. Thomas' attorney. Yet in his brief, Mr. Burgett concedes that Ms. Thomas' counsel did serve his counsel with a copy of the amended affidavit. Mr. Burgett's attorney had eight days to contest anything within that amended affidavit but failed to act on it. Moreover, unlike *Allen*, the trial court only ordered Mr. Burgett to pay a portion, rather than the entirety, of Ms. Thomas' attorney's fees. Accordingly, we hold that the trial court did not deprive Mr. Burgett of his opportunity to be heard." (citations, quotation marks, brackets, and footnotes omitted)).

The trial court made the following findings of fact related to the award of attorney fees:

> 66. Plaintiff/Father has filed not less than five Motions to reduce his child support obligation subsequent to the Court's Order of December 4, 2012 [ ], none of which have

been granted by the Court.

67. Both Plaintiff/Father and Defendant/Mother have conducted exhaustive discovery in this case and it should have been apparent to the Plaintiff/Father that the evidence would not support Plaintiff/Father's Motion for a decrease in child support and would support the Defendant/Mother's Motion for an increase in child support.

68. Defendant/Mother filed her Motion to increase child support in good faith and at the time of the filing of the Motion, Plaintiff/Father was paying an inadequate amount of child support.

69. The pursuit of said Motions by the Plaintiff/Father were in fact frivolous in nature and has resulted in substantial expenses to Defendant/Mother to include employment of an expert accounting witness and substantial sums for attorney's fees.

70. Defendant/Mother is therefore entitled to a reasonable award of attorney's fees from Plaintiff/Father as provided for herein.

The trial court ordered fees based upon North Carolina General Statute Section 50-13.6:

> In an action or proceeding for the custody or support, or both, of a minor child, including a motion in the cause for the modification or revocation of an existing order for custody or support, or both, the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit. Before ordering payment of a fee in a support action, the court must find as a fact that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding; *provided however, should the court find as a fact that the supporting party has initiated a*

> *frivolous action or proceeding the court may order payment*
> *of reasonable attorney's fees to an interested party as*
> *deemed appropriate under the circumstances.*

N.C. Gen. Stat. § 50-13.6 (2023) (emphasis added).

Father first contends that the trial court erred by failing to make findings regarding Mother's acting in good faith and having insufficient means to defray the expenses of the suit and his refusal to furnish adequate support under the circumstances at the time of the institution of the proceeding. Father also contends that Findings Nos. 66, 67, and 69 are "non-relevant," although he does not challenge them as unsupported by the evidence.

Father's argument fails to appreciate that the trial court did not order him to pay attorney fees due to Mother's inability to pay her own fees or her need for child support. The trial court ordered him to pay because he "initiated a frivolous action or proceeding." Findings Nos. 66, 67, and 69 are relevant as they address this reason for the award of attorney fees. Father repeatedly sought to reduce his child support without success and conducted "exhaustive discovery," and although it should have been obvious to him that his child support would increase based upon changes in circumstances since 2012 when the child support amount was initially set, he continued to seek reduction. Father's contention that the trial court either "misinterpreted" North Carolina General Statute Section 50-13.6 or had a "desire to sanction [him]" is entirely baseless. *See Wiggins v. Bright*, 198 N.C. App. 692, 695-96, 679 S.E.2d 874, 876-77 (2009) (stating North Carolina General Statute Section

50-13.6 "grants the trial court authority and discretion to award attorney's fees as appropriate under the circumstances due to the frivolous nature of a plaintiff's action or proceeding" and that the trial court was *also* "authorized under N.C. Gen.Stat. § 50-13.6 based on the findings that [the] defendant was proceeding in good faith . . . and does not have sufficient means to defray the costs and expenses of this matter" (citation, quotation marks, and brackets omitted)); *see also Doan v. Doan*, 156 N.C. App. 570, 575-76, 577 S.E.2d 146, 150 (2003) ("It is true, as plaintiff argues, that the statute has been interpreted as requiring that the court specifically make two findings of fact: (1) the party seeking the award of fees was acting in good faith; and (2) that party has insufficient means to defray the expense of the suit. However, in this case, we need not reach plaintiff's argument that the district court's findings on this issue were unsupported by the evidence, because the trial court also found as justification for an award of attorney's fees that plaintiff's initiation of this custody and support action was without merit, baseless and frivolous." (citation and quotation marks omitted)).

In her cross-appeal, Mother contends the trial court abused its discretion by ordering less than half of her attorney fees incurred. North Carolina General Statute Section 50-13.6 allows the trial court to award attorney fees as "deemed appropriate under the circumstances." N.C. Gen. Stat. § 50-13.6. The trial court acted well within its discretion in awarding $15,000.00. *See Robinson v. Robinson*, 210 N.C. App. 319, 337, 707 S.E.2d 785, 798 (2011) ("[T]he amount of attorney's fees to be awarded rests

within the sound discretion of the trial judge and is reviewable on appeal only for abuse of discretion." (citations and quotation marks omitted)). Mother clearly did not actually need child support from Father, nor did she actually need assistance in paying attorney fees. In fact, she testified that the Entities paid her attorney fees for her. The trial court considered the parties' respective financial circumstances overall in making this determination. And again, the fact that Mother got less than she asked for does not render the trial court's ruling an abuse of discretion, any more than its ruling that Father should pay more than he wanted to pay.

## VII.    Conclusion

As Father's appeal of the Protective Order was not properly served on the Entities, we dismiss Father's appeal of the Protective Order. As to the Modification Order, the trial court's findings of fact regarding Mother's income are supported by competent evidence and Father's challenges to the findings are without merit. Finally, the trial court did not abuse its discretion in determining Sam's reasonable needs, determining the effective date of modification, and awarding Mother $15,000.00 in attorney fees. Thus, we dismiss Father's appeal as to the Protective Order and affirm the Modification Order.

DISMISSED IN PART; AFFIRMED IN PART.

Chief Judge DILLON and Judge STADING concur.